Michael E. Reznick, Esq. (State Bar No. 116126)
283 Ocho Rios Way
Oak Park, California 91377
Telephone: (818) 437-5630
Email: reznagoura@aol.com

Attorney for Debtor
DA & AR HOSPICE CARE, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In Re: DA & AR Hospice Care, Inc.,<br><br>Debtor, | Case No. 2:21-bk-19219-ER<br><br>Chapter 11<br><br>DECLARATION OF MICHAEL E. REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE: (1) DIRECTING MICHAEL E. REZNICK AND YVETTE HAGROVE-BROWN TO PERSONALLY APPEAR TO EXPLAIN WHY THIS BANKRUPTCY WAS NOT FILED IN BAD FAITH; (2) WHY MICHAEL E. REZNICK SHOULD NOT BE REQUIRED TO DISGORGE ALL FEES RECEIVED PURSUANT TO 11. U.S.C. § 329; (3) WHY MICHAEL E. REZNICK SHOULD NOT BE REFERRED TO THE BANKRUPTCY COURT ATTORNEY DISCIPLINARY PANEL FOR FILING A FRAUDULENT BANKRUPTCY CASE; AND (4) WHY YVETTE HARGROVE-BROWN SHOULD NOT BE ORDERED TO PAY THE SUBCHAPTER V TRUSTEE'S FEES INCURRED IN THE INSTANT CASE AND BARRED FROM FUTURE BANKRUPTCY FILINGS<br><br>DATE:       May 11, 2022<br>TIME:       10:00 a.m.<br>CTRM:      1568 |

1

1    I, MICHAEL E. REZNICK, declare as follows:

2    1.   I am an attorney licensed to practice law in the State of California (since 1984) and

3    before this Court, as well as the States of New York and Illinois.    I am counsel of record for

4    the Debtor, DA & AR HOSPICE CARE, INC. (the "Debtor") and signed the Voluntary

5    Bankruptcy Petition (the "Petition") that gave rise to the Trustee's Application for the subject

6    Order to Show Cause ("OSC") and its issuance.   Except as otherwise stated, I have personal

7    knowledge of each of the facts stated herein and could and would competently testify thereto.

8

9    2.   I graduated *Cum Laude* from Loyola Law School in 1984.  While at Loyola, I took

10   an elective "bankruptcy law" class from renowned bankruptcy expert Scott Bovitz, Esq.  One of

11   the first things that Professor Bovitz taught me was that the Bankruptcy Code's purpose is "to

12   give an honest debtor a fair start."  As explained further below and as I explained to the Trustee

13   in written and telephone communications in December 2021 and January 2022, the Debtor was

14   in fact insolvent on the day I signed the Petition because all of the bank accounts of the Debtor

15   and its related companies had been "frozen" by Chase Bank because of conflicting false claims

16   of "ownership" of the bank accounts and businesses by Ailene Rivera ("Rivera") – a criminal

17

18   mastermind whose demonstrably false declaration is relied upon in its entirety in support of the

19   OSC (the "Rivera Declaration").  Regrettably, the Trustee has been conned and duped by Rivera

20   *who is a Physical Therapist by trade – and thus cannot legally own, control or operate any of*

21   *the medical corporations and businesses that she is now claiming under penalty of perjury to*

22   *be the "owner" and "CEO" of in false public filings as a matter of law because she is not and*

23   *has never been a licensed medical doctor or physician.*  (See California Corporations Code

24   sections 13400-13410 (Moscone-Knox Professional Corporations Act) and California Business

25   & Professions Code sections 2000-2521).

26

27   3.   In fact, the Debtor is owned by a medical doctor, JOSE DE LA LLANA, M.D. ("Dr.

28

2

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF
APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

De La Llana"), a licensed California physician. (Attached hereto as Exhibit "A" is a true and correct copy of the genuine Statement of Information ("SOI") filed by Dr. De La La Llana with the California Secretary of State on October 22, 2021, confirming and affirming Dr. De La Llana's ownership of the Debtor and more importantly, that he is the "Medical Director" of the professional medical corporation).

4.    Accordingly, the Trustee's assertion in paragraph 8 of her declaration that on December 21, 2021, "Rivera was able to send me multiple emails with business documents to prove her ownership and allegations" (Trustee's Declaration at 2:7-9) demonstrates to me that the Trustee's entire application for the OSC was and is based on a false premise that was created by Rivera to obfuscate the true facts from the Trustee because as a matter of law, Rivera cannot be a "50 percent shareholder" of the Debtor since she is not a licensed California physician or medical doctor. Moreover, all of the publicly filed and other so-called "corporate" documents attached to the original Rivera Declaration that the Trustee is relying on in support of the OSC have been redacted in their entirety by the Trustee. As a result, the Trustee has deprived me of an opportunity to review and challenge the same evidence that she is now using against me. While these unproduced documents presumably identify Rivera as the "owner" or principal shareholder of the Debtor, the documents are necessarily false and were never authorized by genuine management or the Debtor's Board of Directors because under California law, Rivera cannot legally own or control a medical corporation. (See paragraph 2, above for authority). Needless to say, the Trustee's redaction and withholding of the same documents she is using to support her claims against me also deprives me of a fair opportunity to defend myself against the Trustee's charges by deliberately secreting them from my review and comment.

5.    As Rivera concedes, I was initially retained not as her personal attorney but by the

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF
APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

Board of Directors of NobleQuest Health Foundation, Inc. ("NobleQuest"), a nonprofit

corporation related to the Debtor. I received a $5,000 retainer. Almost immediately, I

discovered that Rivera and others employed by or involved with NobleQuest, its parent, Care

Plus Medical Corporation, the Debtor and other related or affiliated "IPAs" (independent

physician associations) had perpetrated and were still perpetrating a massive embezzlement

scheme against these medical establishments. Among other things, I discovered that Rivera

and others had falsified publicly filed documents and other corporate records, including bank

records, the annual SOIs that are required to be filed with the Secretary of State and other

documents pertaining to ownership of the companies and committed multiple acts of related

fraud and defalcation. As a consequence, I recommended that the Board immediately form a

"Special Litigation Committee" ("SLC") to investigate Rivera's suspected fraud and

embezzlement and to place Rivera on paid administrative leave while the investigation took

place. (Attached hereto as Exhibit "B" is a true and correct copy of the September 2, 2021

NobleQuest Board Minutes discussing and describing the SLC's formation and its task).

     6. On October 15, 2021, the scope of my engagement and retention expanded to include

filing state court litigation and if necessary, a bankruptcy petition to recover any of the funds,

property or assets embezzled by Rivera and her cohorts. (A true and correct copy of my

October 15, 2021 "Retainer for Legal Services – Broad Scope" letter is attached hereto as

Exhibit "C"). As I explained in my October 15 letter:

> As you know, I have represented NobleQuest Health Foundation ("NQ"), a California
> non-profit corporation, for over six months. As a result of a general investigation that I
> authorized and approved that was conducted by Care Plus Medical Group, Inc.'s ("Care
> Plus's") current Chief Reorganization Officer ("CRO"), Kellie Williams ("Kellie"), I
> discovered to my regret that there appear to be a number of fraudulent transactions and
> other defalcations involving management and control of NQ and Care Plus by Aileen
> Rivera ("Aileen") over the past few years. I understand that these bad acts include
> Aileen's purchase for her own personal account companies and real property with NQ's
> and Care Pius's funds, without your knowledge or consent, as well as a number of other

unauthorized cash transfers from these companies or entities owned or controlled by Aileen, again without your knowledge or consent.

Based on the foregoing, you previously authorized me to form and create a "Special Litigation Committee" ("SLC") comprised of me, Larry Semenza, a Las Vegas attorney representing Mike Patel, an investor in NQ, and Daniel Callahan, a Co-Trustee of a lender to NQ and Care Plus, for the purpose of placing Aileen on paid administrative leave while the SLC investigated and subsequently reported to you and management any wrongdoing the SLC discovered perpetrated by Aileen and our recommendations about a course of action.

Regrettably, Kellie's investigation to date has revealed that Aileen's wrongdoing was and is on a much grander scale. In fact, I understand that Aileen may have embezzled as much as $2,000,000 in company funds to purchase real estate and other assets for her own benefit and use.   As a consequence, you have decided to expand the scope of my representation to now include the representation of not only NQ, but also you individually and as President of Care Plus, as well as Care Plus itself, for the purpose of increasing the scope of our investigation to include litigation if necessary to protect you and the companies from any further prejudice or detriment resulting from Aileen's wrongdoing.

Based upon our discussions, I understand that you wish this matter to be handled generally as follows:

***To represent your collective interests and participate in the investigation that Kellie started into the financial and other wrongdoing by Aileen and undoubtedly others under her direction or within her control. The difference is that Kellie will now be supported by the SLC, me and my law firm. You have also authorized me to cloak Kellie with actual and ostensible authority to act on my law firm's behalf with respect to any matter involving you or the companies that might ordinarily require the services of an attorney or paralegal.***

(Exhibit "C," pages 1-2).

7.   Unfortunately, things got worse for the Debtor and its related companies.   Among other things, management of the Debtor and related companies informed me that shortly after the SLC was created and while on paid leave, Rivera and her cronies who participated in her criminal enterprise removed and stole any and all pertinent files containing corporate records and other critical documents pertaining to ownership and control, property and other valuables from the Debtor's premises in the dark of night, including most notably financial and corporate records, as well as patient files, without any authorization or consent.  (In a later investigation I

5

learned that Rivera in fact wrongfully diverted patients and transferred patient files belonging to the Debtor and related companies to her sister, MARIA VICTORIA ALFARO, M.D. ("Dr. Alfaro")).

8.   In light of the precarious financial situation that Rivera had caused, I prepared and filed a Los Angeles County Superior Court Complaint (the "State Action") to attempt to recover as quickly as possible the losses that Rivera was causing.  (A true and correct copy of the Complaint I filed in the State Action on October 22, 2021 is attached hereto as Exhibit "D").  Instead, Chase filed a separate state court interpleader action and deposited all of the funds of the Debtor and related companies that Chase had formerly frozen into the Court.  As result of Rivera's and Chase Bank's actions, the Debtor could no longer pay its operating expenses as they came due and thus had few options other than bankruptcy.

9.   The State Action Complaint (Exhibit "D" hereto) speaks for itself and alleges detailed facts that describe what Rivera did, how Rivera did it and the harm that Rivera created as a result of her embezzlement.

10. Accordingly, the Debtor was genuinely "insolvent" at the time I signed the Voluntary Bankruptcy Petition (the "Petition") in this case.  When I signed and filed the Petition, I was also cautiously optimistic that I would also be able to convince Chase to unfreeze the Debtor's and other related businesses' deposit accounts so the Debtor could continue to operate its business while the litigation continued.  There was no "bad faith" or "fraudulent intent." My sole intent when I signed the Petition was to seek a discharge in good faith of my client - whom I believed then and now to be an honest debtor - if it became necessary after litigating the Debtor's claims against Rivera due to the massive embezzlement she orchestrated, as well as Rivera's bogus and unlawful claims to rightful ownership.  I also intended to refile the State Action as an adversary proceeding, hopefully with the support of and assistance from

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF
APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

the Trustee and perhaps a medical ombudsman.  Alternatively, I planned to consider obtaining

relief from the automatic stay and simply prosecuting the State Action against Rivera.  In either

case, my actions were clearly justified under the circumstances and do not warrant the

imposition or issuance of the requested OSC.

11. As I explained to the Trustee prior to the subject Creditors' Committee Meeting that

gave rise to the OSC, my client and I intended to file an "amended" Petition with compliant

schedules as soon as we were able to obtain the documents from Rivera and/or Chase by way of

discovery or subpoenas with the information my client needed to prepare them.

12. I communicated the Debtor's dire financial situation at length to the Trustee and

specifically sought a continuance of the 341 Meeting of Creditors and informal interview.  I also

explained to the Trustee orally and in writing that without the information that my client needed

to prepare schedules and other compliant documents, the creditors' meeting would not be

helpful to the Trustee of the Creditors of the Debtor as I could not and would not allow my

client's representative, Dr. Hargrove-Brown, to answer questions under oath unless she had the

requisite documents in front of her.   I also enclosed a copy of the Complaint that was filed

against Rivera and others in the State Action (Exhibit "D") that detailed at length the claims the

Debtor had against Rivera.  More importantly, my email and the Complaint advised and

informed the Trustee repeatedly that Rivera (as a lay person) could not legally "own" the Debtor

as a matter of law, notwithstanding the Trustee's subsequent claims to the contrary that Rivera

"was able to send [the Trustee] multiple emails and business documents [on December 21,

2021] to prove her ownership."  (Trustee's Declaration at 2:8-9) (para. 8). (A true and correct

copy of my email to the Trustee and the enclosed Complaint are attached hereto as Exhibit "E")

13.  Regrettably, the Trustee ignored all of the relevant and dispositive evidence

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF
APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

contained in my mail and the enclosed Complaint and chose instead to blindly believe Rivera's contrary claim of "ownership," even though a physical therapist cannot as a matter of law "own" or control a medical practice.

14. Accordingly, the evidence to date establishes that it was and is the Trustee, not me, who acted in "bad faith" with respect to this matter. Among other things, the Trustee refused to continue the Creditors' Meeting despite evidence I provided her that established the meeting would be a nonsense exercise without compliant schedules. I also explained the reason that we could not prepare the schedules was because my client's representatives reported to me that Rivera had stolen all of the corporate records. Similarly, I explained to the Trustee that Chase had frozen all of the Debtor's bank statements and related financial information and refused to provide us with access to such documents pending the result of Chase's interpleader action.

15. I have never been disciplined by any of the State Bars that I am a member of. In addition, I have not been the subject of any ethics or other complaints filed by former clients or adversaries or judicial officers. As a consequence, I take seriously the Trustee's attempt to deprive me now of my livelihood after 37 years of practice, without due process, simple fairness or an adequate opportunity to be heard. For example, while the Trustee claims that the documents attached to the Rivera Declaration "prove her ownership and allegations," despite California law to the contrary that establishes that Rivera cannot legally own or control a medical practice because she is not a medical doctor, the Trustee deliberately chose to redact all of the exhibits she is using against me. Moreover, the Trustee refused my demands to produce the charging documents, without any legal justification. Moreover, the Trustee only agreed to a 30-day continuance of the OSC as opposed to the requested 60 days, which the Trustee knew or should have known would not be sufficient time for me and my client to obtain the documents through discovery in the State Action. Thus, from my vantage point, the Trustee's conduct

constitutes quintessential "bad faith."    What is the Trustee afraid of?  If the Trustee is seeking to have a bankruptcy discipline committee review my actions and is jeopardizing the future of my licensure, the least I should expect to receive is the documentary evidence that the Trustee is using against me.  Due process requires nothing less.

16.  The Trustee also decided to move forward with the Creditors' Committee Meeting despite my reasonable request for a continuance until the Debtor could obtain the documents needed to prepare appropriate schedules.  As I tried to explain to the Trustee, going forward with the 341 Meeting would be a waste of everyone's time under the circumstances without a continuance.  The Trustee refused my request but is now seeking to recover trustee fees with unsupported claims about my client and me wasting the Trustee's time.  Again, this evidences the Trustee's "bad faith," not mine.

17. The Trustee's redaction of the evidence she is seeking to use against me without legal justification and blind reliance on the false and perjurious Rivera Declaration to support her OSC Application after being notified by me in writing that Rivera, a lay person rather than a licensed physician who is incapable of owning or controlling a medical corporation as a matter of law, while ignoring the Debtor's allegations asserted in the State Action, also shows pervasive bias by the Trustee.  The Trustee's blind allegiance to Rivera in the face of undisputed, dispositive evidence that Rivera's physical therapist license does not give her the ability to "own" or "control" the Debtor is further evidence of the Trustee's bad faith, not mine.

18. Contrary to the statement I made at the Creditors' Committee, I have never received any fees or renumeration for my services for this matter from the Debtor or any other person.  I was confused and made a mistake at the Creditors' Meeting when the question was asked of me.  In an abundance of caution, I double checked my Attorney Trust Account when I returned to my office after the Creditors' Meeting and determined that in fact, the $15,000 I referred to at the

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

Creditors' Committee Meeting that I received on or about October 15, 2021 from was from Care Plus Medical Corporation pursuant to our expanded retainer agreement (Exhibit "C" hereto), not the Debtor.  In fact I have never received any fees, reimbursement of costs or other compensation directly or indirectly from the Debtor.  Moreover, I am not expecting to receive any fees in the near future because Chase Bank froze the Debtor's bank accounts before the filing of the Petition, thereby negating the Debtor's ability to pay me anything for my services.

19. Contrary to the assertions of the Trustee, and as evidenced herein, I never engaged in "bad faith" or fraud with respect to the signing or filing of the Petition nor any other papers that I signed or filed herein.  I was just trying to protect an honest debtor from unscrupulous creditors and looking for help from the Trustee's Office to assert the Debtor's claims against Rivera for embezzlement and its claims against Chase Bank.  Regrettably, such help never came.

20. For all of the foregoing reasons, I respectfully request that the Court discharge the OSC in its entirety and allow the litigants to proceed apace with the State Action, especially since Chase Bank is now a defendant in the State Action and has filed a related interpleader action.  As a result, all of indispensable parties to this contentious dispute have now appeared or can appear in the State Action to litigate and if necessary, challenge the Debtor's claims.  The Trustee can even intervene in the State Action if the Trustee determines that a reference to the Department of Justice is appropriate in light of Rivera's perjurious declaration

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

Executed on April 27, 2022 at Oak Park, California

/s/ Michael E. Reznick

MICHAEL E. REZNICK

DECLARATION OF MICHAEL REZNICK IN SUPPORT OF OPPOSITION TO U.S. TRUSTEE'S NOTICE OF APPLICATION AND APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE

# EXHIBIT A



**California Secretary of State**
Electronic Filing



# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | DA & AR HOSPICE CARE, INC |

| | |
|---|---|
| Entity (File) Number: | C3720811 |
| File Date: | 10/22/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GX68787 |

**Detailed Filing Information**

1.  Entity Name:

    DA & AR HOSPICE CARE, INC

2.  Business Addresses:
    a.  Street Address of Principal
        Office in California:

        850 W. Highland, Suite A
        San Bernardino, California 92405
        United States of America

    b.  Mailing Address:

        850 W. Highland, Suite A
        San Bernardino, California 92405
        United States of America

    c.  Street Address of Principal
        Executive Office:

        850 W. Highland, Suite A
        San Bernardino, California 92405
        United States of America

3.  Officers:
    a.  Chief Executive Officer:

        Jose  De La Llana, M.D.
        850 W. Highland, Suite A
        San Bernardino, California 92405
        United States of America

    b.  Secretary:

        Jose  De La Llana, M.D.
        850 W. Highland, Suite A
        San Bernardino, California 92405
        United States of America

Document ID: GX68787

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

# California Secretary of State
## Electronic Filing

Officers (cont'd):

   c.  Chief Financial Officer:

          Jose  De La Llana, M.D.
          850 W. Highland, Suite A
          San Bernardino, California 92405
          United States of America

4.  Director:

          Jose  De La Llana, M.D.
          850 W. Highland, Suite A
          San Bernardino, California 92405
          United States of America

   Number of Vacancies on the Board of
   Directors:                     0

5.  Agent for Service of Process:

          Jose  De La Llana
          850 W. Highland Avenue, Suite A
          San Bernardino, California 92405
          United States of America

6.  Type of Business:          Hospice and Palliative Care

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Jose De La Llana, M.D., Medical Director

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GX68787

# EXHIBIT B

**NobleQuest Health**
**Board of Directors Meeting**

| Date: | September 2, 2021 |
|---|---|
| Time: | 1pm meeting delayed till 3:30pm because the attorney was occupied in court. |
| Location: | Videoconference |

| Current Board Members: | Attended | Other Attendees: | Attended |
|---|---|---|---|
| Mitesh Patel - Existing | Y | Antonio Garcia | Y |
| Bhavesh Pandya - New | Y | Yvette Hargrove-Brown | Y |
| Mayuri Patel - New | Y | Lawrence Semanza | Y |
| Vijay Swarna - New | Y | Michael Reznick - corporate attorney | Y |
| John Bambao - New | Y - partially | Daniel Callahan | Y |
| Lourdes - New | N | Kelly Williams | Y |
| Jorge - New | Y - partially | Jose Dela Llana, MD | Y |
| Razen Sanchez - Existing | N | | |
| No other members attended | | | |
| | | | |

**Introduction:**

The meeting was called to order by Attorney Reznick.

**Approval of Prior Board Minutes:**

None

Review of financial misappropriations:

**Attorneys have reviewed emails and documents presented regarding CEO Ailene misappropriation of funds and failure to add board members per agreement she entered into on behalf of NobleQuest. Meditab was to assign 6 board members as a part of the financial help and 6 new board members were named today.**

**Review of corporate documents and finances indicates that the CEO and some of the board colluded to manufacture board meetings and financials. Some board members failed to perform their duties to monitor finances and management. Much of information requested is still missing.**

**It was brought to the attention of the board that there are family members of the ceo who still work for the company and who may have helped the CEO in the coverup efforts and this needs to be investigated thoroughly.**

**There was no history of the money given by Meditab in the board minutes and no clear explanation of what happened to the funds was given. Furthermore, key staff in management and board were not made aware of the monies paid. It was agreed that a thorough audit will be performed for the organizational finances regarding finances given to Noblequest to help the clinic and to obtain a new EHR. There were steps taken to add 4 more clinics to NobleQuest for the CEO failed to complete that. Attorney Reznick will make sure a neutral party will lead the audit with Attorney Semanza's input.**
**--Approved unanimously to complete through audit.**

New board members are as below:

**Bhavesh Pandya -- Extensive experience with healthcare technology and is a fulltime employee at a large FQHC clinic in Southern California.**

**Vijay Shwarna -- Extensive experience with healthcare technology and works with a large IPA in Sourthern California who works with several FQHC clinics.**

**Mayuri Patel -- Extensive experience in healthcare with a degree in Microbiology. Work with CMG clinics by managing their EHR system and being part of operations.**

**John Bambao -- Experience in managing healthcare technology. Attended but could not stay because the meeting was delayed by over 2 hours.**

Lourdes -- Extensive experience in managing clinics and a medical doctor in central America and a BS nursing candidate in US. Out on medical leave so could not attend the meeting.

Jorge -- Extensive experience managing finance and doing billing for a FQHC clinic. Attended the meeting but could not stay through the meeting as it was delayed by over 2 hours.

--Board members approved unanimously.

Merger of four CMG clinics to Noble Quest was to take place per Mr. Patel but no steps were taken. It was agreed that Dr. Hargrove and Antonio Garcia will work with existing management when appropriate to expedite the merger that was to take place many years ago.

--Approved unanimously.

Daniel and Attorney Reznick left the meeting while the meeting continued to discuss next [1]steps and Dr. Hargrove completed her meeting notes. Next meeting will take place as soon as it feasible but attorney and Daniel will keep all parties informed.

*[signature]*

**Yvette Hargrove**

---

[1]

# EXHIBIT C

**MICHAEL E. REZNICK**
A PROFESSIONAL CORPORATION
LOS ANGELES • NEW YORK • CHICAGO

**MICHAEL E. REZNICK**
PRESIDENT

283 OCHO RIOS WAY
OAK PARK, CA 91377
295 MADISON AVE., 12TH FLOOR
NEW YORK CITY, NY 10017
40 E. CHICAGO AVENUE, SUITE 386
CHICAGO, IL 60611

**JACOB DYLAN REZNICK**
EXECUTIVE ASSISTANT

DIRECT: 818.437.5630
reznagoura@aol.com
www.michaelreznicklaw.com

October 15, 2021

## VIA PERSONAL DELIVERY

Jose de la LLana, M.D., individually
Jose de la Llana, M.D., President and Majority Shareholder
Care Plus Medical Group, Inc.
LADMC
Downtown Medical Center
1711 Temple Street
Los Angeles, California

### Re:   *Retainer for Legal Services – Broad Scope*

Dear Dr. de LLana:

As you know, I have represented NobleQuest Health Foundation ("NQ"), a California non-profit corporation, for over six months. As a result of a general investigation that I authorized and approved that was conducted by Care Plus Medical Group, Inc.'s ("Care Plus's") current Chief Reorganization Officer ("CRO"), Kellie Williams ("Kellie"), I discovered to my regret that there appear to be a number of fraudulent transactions and other defalcations involving management and control of NQ and Care Plus by Aileen Rivera ("Aileen") over the past few years. I understand that these bad acts include Aileen's purchase for her own personal account companies and real property with NQ's and Care Plus's funds, without your knowledge or consent, as well as a number of other unauthorized cash transfers from these companies to companies or entities owned or controlled by Aileen, again without your knowledge or consent.

Based on the foregoing, you previously authorized me to form and create a "Special Litigation Committee" ("SLC") comprised of me, Larry Semenza, a Las Vegas attorney representing Mike Patel, an investor in NQ, and Daniel Callahan, a Co-Trustee of a lender to NQ and Care Plus, for the purpose of placing Aileen on paid administrative leave while the SLC investigated and subsequently reported to you and management any wrongdoing the SLC discovered perpetrated by Aileen and our recommendations about a course of action. Regrettably, Kellie's investigation

to date has revealed that Aileen's wrongdoing was and is on a much grander scale. In fact, I understand that Aileen may have embezzled as much as $2,000,000 in company funds to purchase real estate and other assets for her own benefit and use.

As a consequence, you have decided to expand the scope of my representation to now include the representation of not only NQ, but also you individually and as President of Care Plus, as well as Care Plus itself, for the purpose of increasing the scope of our investigation to include litigation if necessary to protect you and the companies from any further prejudice or detriment resulting from Aileen's wrongdoing.

Based upon our discussions, I understand that you wish this matter to be handled generally as follows:

***To represent your collective interests and participate in the investigation that Kellie started into the financial and other wrongdoing by Aileen and undoubtedly others under her direction or within her control. The difference is that Kellie will now be supported by the SLC, me and my law firm. You have also authorized me to cloak Kellie with actual and ostensible authority to act on my law firm's behalf with respect to any matter involving you or the companies that might ordinarily require the services of an attorney or paralegal.***

### Attorney Fees:

Fees for legal services rendered under this Agreement will be billed on an hourly basis. My hourly rate presently is $750.00 an hour. From time to time, associate attorneys and paralegals in this firm may also work on your case under my supervision and direction. Associates' time will be billed at $250.00 per hour and paralegals' time. To the extent that Kellie spends time on the investigation under my direction and control as opposed to whatever duties she will be providing to you as your CRO will be charged at her normal and customary rate.

Billings generally are in increments of fifteen minutes, or a quarter-hour. You will be charged for telephone communications and for my review of written correspondence and other documents received by me in this matter at a minimum of 15 minutes.

Certain items of routine work, which are based upon my professional knowledge and experience, will be billed at a flat rate or actual time, whichever is greater. These items may, but do not necessarily include, the following items:

Subpoenas (regular)
Subpoenas Duces Tecum
Document demands
Interrogatories
Notice of Deposition
Motions
Preparation of Balance Sheets, Income and Expense or Profit and Loss Statements
Declarations

Orders to Show Cause
Orders
Ex Parte Applications
Complaints for the purposes of obtaining TROs, injunctions and recording of Lis Pendens
Judgments

I do not charge a flat rate for court appearances. My court appearance time
will be billed on the basis of time actually spent in court, including travel
time.

## Litigation Costs

Litigation costs will be billed separately from attorney fees. These costs
include, but are not limited to, photocopies, long distance telephone charges,
mobile telephone charges, fax transmission charges, courier charges, process
service charges, witness fees, deposition reporter and transcription fees,
court reporter fees, and investigators' fees.

All costs not remitted directly to you for payment will be billed to you on a
monthly basis and are to be paid promptly upon receipt of each month's
statement. In the event significant costs are anticipated (such as expenses
incurred for taking depositions), you agree to advance those sums to me or
make the payments in advance, if required, directly to the persons providing
the services.

## Expert Consultant/Witness Fees:

Fees for appraisers, accountants, investigators and other expert consultants
and witnesses whose services are or may be necessary in this proceeding are
not covered by this Agreement. Any such services shall be rendered to you
pursuant to separate and independent fee agreements between you and the
person providing the expert services. These fee agreements may require you
to make separate deposits or retainers.

## Retainer:

Since the scope of my representation has increased exponentially by this
engagement and will most likely require my attention on a daily basis
before we arrive at an answer, you have agreed to retain my services in
this matter with a replenishing minimum retainer in the amount of
$15,000.00, which is to be maintained at all times in my Attorney-Client
Trust Account as a deposit for the hourly rate I charge you and other
clients for my future legal services and in particular, to secure my time
and services. As we also discussed, this retainer is nonrefundable.

The fees for my professional services, computed pursuant to paragraph 2 of
this Agreement, will be deducted from the nonrefundable retainer fee.

Should it become necessary to commence legal proceedings to collect any fees and/or costs due me pursuant to this Agreement, the prevailing party shall pay all attorney fees and court costs incurred in that matter.

If you understand and agree to the terms set forth above, please sign the original of this Agreement and return it to my office at your earliest convenience. The enclosed copy of this Agreement is for your files.

I will keep you advised of the status of all matters pertaining to my representation of you and the companies.  In the meantime, please do not hesitate to contact me concerning questions you may have and issues as they arise.

Very truly yours,

Michael E. Reznick

ACKNOWLEDGMENT

I HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THIS AGREEMENT AND ACCEPT THE AGREEMENT THIS DATE.

DATED: As of October ___, 2021.

_____
JOSE DE LLANA, individually


_____
JOSE DE LLANA, as President
CARE  PLUS MEDICAL GROUP, INC.

# EXHIBIT D

Electronically FILED by Superior Court of California, County of Los Angeles on 10/29/2021 03:01 PM Sherri R. Carter, Executive Officer/Clerk of Court, by P. Tarasyuk,Deputy Clerk
21STCV39991

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Scheper

1   Michael E. Reznick, Esq. (CA State Bar No. 116126)
    Law Offices of Michael E. Reznick
2   A Professional Corporation
    283 Ocho Rios Way
3   Oak Park, California 91377
    Telephone: 818.437.5630 (Direct Dial)
    Email:     reznagoura@aol.com
4   Website:   www.michaelreznicklaw.com

5   Attorneys for Plaintiffs JOSE DE LALLANA, M.D., individually
    and as Co-Trustee of CARE PLUS HOLDINGS GROUP TRUST,
    a Nevada Trust and NOBLEQUEST HEALTH FOUNDATION
6   RECOVERY TRUST, a Nevada Trust; CARE PLUS MEDICAL
    CORPORATION, a California corporation; NOBLEQUEST
7   HEALTH FOUNDATION, INC., a California nonprofit corporation;
    DA &AR HOSPICE CARE, INC., a California corporation; and
8   KELLIE WILLIAMS, as Co-Trustee of THE PATENT AND
    TRADEMARK FUNDING HEDGE TRUST, a Nevada Trust

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA

                     FOR THE COUNTY OF LOS ANGELES
10

11  JOSE DE LA LALLANA, M.D.,            Case No.  21STCV39991
    Individually and as Co-Trustee of CARE
    PLUS HOLDINGS GROUP TRUST, a          COMPLAINT FOR DAMAGES,
12  Nevada Trust and NOBLEQUEST          PRELIMINARY AND PERMANENT
    HEALTH FOUNDATION RECOVERY           INJUNCTION, DECLARATORY AND
13  TRUST, a Nevada Trust; CARE PLUS     OTHER EQUITABLE RELIEF FOR
    MEDICAL CORPORATION, a California    FOR:
    corporation; DA & AR HOSPICE CARE,
14  INC., a California corporation;      [1] BREACH OF FIDUCIARY DUTY;
    NOBLEQUEST INC., a California        [2] UNFAIR COMPETITION (OFFICER
15  nonprofit corporation; and KELLIE        MISAPPROPRIATION OF TRADE
    WILLIAMS, as Co-Trustee of THE PATENT    SECRETS) (CUSTOMER LISTS)
    AND TRADEMARK FUNDING HEDGE          (CIVIL CODE 3426 ET SEQ.)
16  TRUST, a Nevada Trust,               [3] CONVERSION (EMPLOYEE AND
                                             OFFICER EMBEZZLEMENT)
17             Plaintiffs,               [4] FRAUD AND DECEIT;
                                         [5] NEGLIGENCE;
18        vs.                            [6] MONEY HAD AND RECEIVED;
                                         [7] VIOLATION OF THE UNFAIR
19  AILENE RIVERA, an individual;            BUSINESS PRACTICES ACT
    NEUTRACUETICAL COMPOUNDING            (BUS. & PROF. CODE  § 17200)
20  TRUST, a Nevada Trust; PEER, INC., a
    California corporation; SEERSOFT, INC.,
    a California corporation; MARIA VICTORIA  DEMAND FOR JURY TRIAL
21  ALFARO, M.D., an individual; and DOES
    1 through 40, inclusive,             UNLIMITED CIVIL CASE
22
               Defendants.
23

                                1

**INTRODUCTORY FACTS**

**RELEVANT TO ALL CAUSES OF ACTION**

COME NOW, Plaintiffs JOSE DE LA LALLANA, M.D. ("Dr. De Lallana"), individually and as Co-Trustee of CARE PLUS HOLDINGS GROUP TRUST, a Nevada Trust and NOBLEQUEST HEALTH FOUNDATION RECOVERY TRUST, a Nevada Trust, CARE PLUS MEDICAL CORPORATION, a California corporation, DA & AR HOSPICE CARE, INC., a California Corporation, and NOBLEQUEST HEALTH FOUNDATION, INC., a California nonprofit corporation (collectively referred to hereinafter as Plaintiffs and/or "CARE/NOBLE/DA&AR") and KELLIE WILLIAMS, as Co-Trustee of THE PATENT AND TRADEMARK FUNDING HEDGE TRUST, a Nevada Trust (the "Trust"), who allege each and all of the following facts against Defendants, and each of them:

1.    DR. DE LA LANA is and at all times herein mentioned was an individual who resides in the State of California, County of Los Angeles. DE LA LLANA is and at all times herein mentioned was a licensed physician in the State of California, who is, and at all times herein mentioned was, the Chief Executive Officer, Medical Director and controlling shareholder of care/noble/da&ar/.

2.    At all times herein mentioned, KELLIE WILLIAMS, s Co-Trustee of THE PATENT AND TRADEMARK FUNDING HEDGE TRUST (the "Trust"), was and is the duly authorized managing agent of CARE/NOBLE/DA&AR and with respect to Dr. De La Lallana, his authorized managing agent on all matters pertaining to his personal and business financial affairs. Williams was and is also the servicing agent for Dr. Da La Llana and Care/Noble/DA&DR under the Revolving Line of Credit. Toward that end, the Trust was and is charged with the task of investigating and determining the nature, scope and extent of the rampant fraud, defalcations and irregularities that Williams, Dr. De La Llana and other managers of Care/Noble/DA&AR recently discovered has taken place at the businesses without their permission, knowledge or consent since at least January 2019 and in all likelihood earlier pursuant to a secret, undisclosed fraudulent scheme by and between Defendant AILENE RIVERA ("Rivera") and other

1 named and unnamed defendants and parties -- including Defendant MARIA VICTORIA ALFARO. M.D.

2 ("Dr. Alfaro"), Rivera's own sister and a medical doctor and physician.

3          3.    At all times herein mentioned, Rivera was and currently is the ringleader of the

4 fraudulent scheme.  The purpose, aim and goal of Rivera's fraudulent scheme and in particular,

5 the agreement and conspiracy to defraud Plaintiffs, as more particularly alleged hereinbelow, was

6 of the fraudulent scheme was and is to use her role as an officer of Plaintiffs' respective businesses to

7 illegally gain access to business and other significant records and documents pertaining to bank accounts,

8 real estate, personal property and other assets owned, controlled and/or operated by Plaintiffs or Plaintiffs'

9 businesses so she and others could secretly convert, steal and embezzle such assets for their own personal

use and benefit.

10          4.    Pursuant to and in furtherance of Defendants' conspiracy to defraud and fraudulent

11 Scheme, perpetrated by Defendants, and each of them, with spite, malice, hatred, ill will and bad intent

12 toward Dr. Da Llalana and the other Plaintiffs for the purpose of destroying Plaintiffs and their respective

13 business ventures in order to gain an illegal and unfair competitive edge over Plaintiffs in the same

marketplace, in flagrant disregard of their fiduciary duties – was to use Rivera's access as an officer to steal,

14 embezzle, transfer, redirect, and convert each and every asset owned and controlled by Plaintiffs, including

15 patient files and the patients themselves, often redirecting such patients without their knowledge to medical

16 facilities owned and operated by Rivera, Dr. Alfaro and other named and unnamed defendants, as well as

17 assets formerly owned and controlled, by Dr. Da La Llana and Plaintiffs that are now in the name of Rivera,

18 Dr. Alfaro or their nominees, as constructive trustees for Plaintiffs. Among other things, Rivera used Dr.

19 Alfaro's medical practices as secret and illegal "conduits" through which Plaintiffs' funds, patients, real and

personal property and other assets were transferred, without Plaintiffs' knowledge or consent, and to park

20 and hold patient files and receive Plaintiffs' patients. Among other things, Rivera and Dr. Alfaro redirected

21 Plaintiffs' patients to health care providers and other businesses or physicians directly or indirectly

22 controlled by Rivera and her sister, Dr. Alfaro, and other defendants whose identities are presently unknown

to Plaintiffs, without the prior knowledge, permission or consent of Plaintiffs or the patients themselves..

23

5. At all times herein mentioned, Rivera concealed her illegal and wrongful actions from Plaintiffs pursuant to and in furtherance of her fraudulent scheme and employed agents to further secrete her actions, including Dr. Alfaro and her staff.

6. Pursuant to and in furtherance of Rivera's fraudulent scheme, Rivera and her named and unnamed coconspirators also purchased real and personal property and other assets with funds and assets stolen, converted, wire transferred and embezzled from Plaintiffs. Rivera and her coconspirators also switched legal ownership of medical practices and facilities and real estate formerly owned by Plaintiffs to Rivera or her nominees, including Dr. Alfaro,, to further their illegal and unlawful ends. Rivera also used unsuspecting third parties to further her illegal conspiracy and fraudulent scheme, convincing them to change the names on legal documents from Plaintiffs to her name or the name of her nominees to obfuscate the truth and further secrete assets that at all times herein mentioned were and are legally and equitably owned or controlled by Plaintiffs.

. 7. Pursuant to and in furtherance of this conspiracy and Rivera's fraudulent scheme, Defendants and/or their agents or nominees created and formed a dummy and shell company called "SEERSOFT, INC." ("Seersoft""), a California corporation with its principal place of business in the State of California, County of Los Angeles.

8. Plaintiffs are informed and believe and thereupon allege that at all times herein mentioned, Seersoft and/or an as yet handful of unknown "DOE" Defendants controlled by Ailene, were in the ostensible business of providing, making and manufacturing and crating electronic medical records software. At all times herein mentioned, Seersoft purported to be a legitimate software maker and producer which also represented that it provided and provides services to physicians and medical practice groups, such as Dr. De La Llana and Care/Noble/DA&AR. These services included, among other things:    (i) billing governmental agencies at the State and Federal levels, including Medicare and Medicaid, for services rendered by physicians or other medical practitioners; and (ii) gathering and safeguarding patient medical records and data, including medical conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information, and payment data.

4

9.    Defendant AILENE RIVERA ("Rivera") is and at all times herein mentioned an individual who resides in the State of California, County of Los Angeles.  At all times herein mentioned, Rivera was and is an officer and/or director and shareholder of Seersoft.

10.    Beginning on a date unknown but continuing to the present time, RIVERA and her co-conspirators, both known and unknown, including Defendant MARIA VICTORIA ALFARO, M.D. ("Dr. Alfaro"), a medical doctor, physician and more importantly, Rivera's sister and her direct and indirect "partner" in the wrongs and financial fraud and financial crimes herein alleged and her coconspirator in the fraudulent scheme alleged herein.

10.a    At all times herein mentioned, Dr. Alfaro served as Rivera's illegal "conduit" through which Rivera transferred, "parked," held, deposited and/or and controlled deposits of her ill-gotten profits and gains that she and her coconspirators received directly and indirectly (such as Mediare payments redirected to Dr. Alfaro or businesses owned and controlled by Defendants), without Plaintiffs' knowledge or consent.  As a result of the wrongful acts of Rivera and her coconspirators, any and all funds and real and personal property formerly owned and controlled by Plaintiffs that were obtained by and through fraudulent means that Rivera and/or her nominees now own, control or hold is held in their names as constructive trustees for Plaintiffs.

11.    Pursuant and in furtherance of Rivera's fraudulent scheme, aided and abetted by Dr. Alfaro and the other named defendants, as well as other unnamed defendants whose identities are unknown to Plaintiffs and thus can only be identified as "DOES" at this point, Rivera orchestrated a common plan whose purpose was to leave Plaintiffs without any assets once the transfers to Rivera and her cronies were accomplished and complete.  Toward that end, and in furtherance of her fraudulent scheme, Rivera fraudulently induced Dr. De La Llana to trust her and in particular, to entrust her as a co-officer of the medical facilities they both worked for and owed fiduciary duties to to provide her with unfettered access to the corporate and other business (and Dr. Da Llalana's personal) account numbers and other related bank account information, as well as access to the other private and sensitive businesses' books and records. Rivera also sought and obtained the official records of the corporate Plaintiffs, such as Articles of

1  Incorporation, the corporate "seals" and bylaws and minute books, not to mention records pertaining to

2  government agencies, insurers and payors such as Medicare and Medical.

3        12.        At all times herein mentioned, in furtherance of her fraudulent scheme, Rivera used

4  unfettered access and the trust she sought from Dr. Da Llana to secretly change, alter and amend critical

   documents pertaining to Dr. De La Llana's personal financial affairs, and purposely changed for her benefit

5  any and all documents  pertaining to corporate financial affairs.  Among other things, Rivera filed false and

6  fraudulent documents with the California Secretary of State to falsely suggest (under penalty of perjury) that

7  she was the sole owner of businesses that she was unable to own because she was  and is not a medical

8  doctor.  Rivera and her coconspirators also falsified bank records and corporate minutes and resolutions in

   order to obtain signing privileges at all of the banks and financial institutions in which funds paid by
9
   Medicare and other governmental agencies, earmarked for Plaintiffs, were supposed to be deposited.  Instead
10
   of depositing such funds into accounts that were and are for the benefit of Plaintiffs, Rivera redirected such

11 funds into bank accounts that she owned and controlled, often relying on Dr. Alfaro's medical practice as a

12 "straw person" to assist her in perpetrating the fraud against Plaintiffs (and of course, the federal, state and

13 local governments.

14        13.        At al times herein mentioned, Rivera also fraudulently induced Dr. De La Llana and

   Care/Noble/DA&AR to provide her with unfettered access to bank accounts and private financial
15
   information and documents pertaining to the assets and other private information pertaining to assets owned
16
   and controlled by Plaintiffs, changing signature cards and other documents in order to gain access to

17 unauthorized funds for her own personal use and benefit.

18        14.        At all times herein mentioned, Rivera, the largest minority shareholder of the

19 corporate Plaintiffs, cloaked with the highest of fiduciary duties.  She was and still is an employee of the

   corporate Plaintiffs, similarly requiring that she act consistent with her fiduciary duties.  These fiduciary
20
   duties required and require Rivera and other officers under her direction and control to act with fidelity and
21
   in highest good faith with respect to the corporations she co-managed and controlled -- and with respect to

22 her relations with other shareholders, including Dr. Da Llalana, the true medical owner and director of the

23
                                                  6

1    medical facilities that Rivera was supposed to be working for.  Instead, Rivera worked only for herself and

2    her coconspirator cronies, secretly but flagrantly breaching her fiduciary duties, in bad faith, by stealing or

3    attempting to steal virtually everything Plaintiffs owned, without their knowledge or consent.

4       15. Rather than preserving and protecting the assets and funds owned and

     controlled by Dr. De La Llana and Plaintiffs, and managing such assets for the benefit of Plaintiffs, Rivera

5    ripped off Plaintiffs pursuant to her fraudulent and illegal scheme.

6       16. Beginning on a date unknown but continuing to the present time, Defendant

7    Rivera fraudulently and wrongfully induced DE LA LANA, through his various related entities, to consent

8    to approving a loan, to enable Noblequest Health Foundation, a captive related entity to Care Plus Medical

9    Group, to agree to an exclusive relationship, wherein Noblequest was to provide its facilities for Care Plus

     Medical patients, in exchange for agreeing to merge with other clinics to expand its footprint of clinics for
10
     patient care.  In the guarantees, it was agreed that Five  Hundred Thousand Dollars ($500,000.00) in
11
     proceeds from a Revolving Line of Credit would be transferred to Noblequest Health Foundation, and

12   utilized by Care Plus Medical Group to be utilized to expand its operation merging with other congruent

13   medical operations. The merger did not occur due to malfeasance and conversion of the loan proceeds by

14   RIVERA causing irreparable damage to Care Plus Medical Group, Neutraceutical Compounding Trust, and

     other Plaintiffs, consisting of substantial lost business and corporate opportunities, not to mention the
15
     monthly rental costs savings and savings resulting from the personnel merger.
16
        17. Plaintiffs subsequently discovered and now assert that Rivera, aided and abetted
17
     by her coconspirator defendants, including Seersoft and Dr. Alfaro, converted and embezzled funds,

18   personal and real property formerly owned and controlled by Dr. De La Llana and/or the other Plaintiffs.

19      18. The true names and capacities, whether individual, corporate, associate or

     otherwise of the defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiffs.
20
     Accordingly, Plaintiffs sue these defendants by their fictitious names and will seek leave to amend this
21
     complaint to show these defendants' true names and capacities when such information has been ascertained.

22   Plaintiffs are informed and believe and thereupon allege that each of the fictitious named defendants is

23

7

1   responsible in some manner for the events and occurrences alleged herein, and that the fictitious named

2   defendants directed, caused or contributed to Plaintiffs' damages. Plaintiffs are informed and believe and

3   thereupon allege that Does 1 through 10, inclusive, acted as the agents, employees, co-venturers,

4   and/partners of the named Defendants herein, and Does 1 through 10, inclusive, while acting in the course

    and scope of their agency, employment, co-venture, and/or partnership, performed the acts and conduct

5   hereinafter alleged and that said acts and conduct were ratified and approved by Defendants, and each of

6   them.

7           19.     Plaintiff Care/Noble/DA&AR was founded on or about February 24, 2017.

8   Care/Noble/DA&AR provides family medical services and at all times herein mentioned was and is owned

9   and operated principally through Dr. Daniel Rose's ("Dr. Rose's") "Neutracuetical Compounding Trust."

    At all times herein mentioned, Care/Noble/DA&AR was and is reimbursed for its services primarily through

10  governmental agencies at the State and Federal levels, including Medicare and Medicaid.

11          20.     In January 2019, in reasonable reliance upon a long-standing relationship of trust

12  and confidence with SEERSOFT and RIVERA, and each of them, Care/Noble/DA&AR, by and through

13  Dr. Rose's Neutracuetical Compounding Trust, secured the services of SEERSOFT.

14          20a.    At all times herein mentioned, SEERSOFT was operated by and through RIVERA

    and her coconspirator defendants, and each of them, to provide the following goods, products and services

15  to Plaintiffs: (i) billing governmental agencies at the State and Federal levels, including Medicare and

16  Medicaid, for services rendered by physicians or other medical practitioners operating through

17  care/noble/da&ar; and (ii) gathering and safeguarding for care/noble/da&ar, and its constituent physicians

18  and medical practitioners, patient medical records and data, including medical conditions, blood test results,

19  names, addresses, dates of birth, Social Security numbers, health insurance information, and payment data.

20          20b.    Commencing in January 2019 and continuing through and including the present

    time, RIVERA and her coconspirators, and each of them, acting both as authorized agents of SEERSOFT

21  and in their personal capacities, together with Does 1 through 10, and each of them, engaged in a course of

22  conduct to misappropriate funds from Plaintiffs and to retain unjustly for Defendants the Medicare, Medicaid

23

                                                    8

and/or insurance proceeds billed and collected based on the medical services rendered by Plaintiffs and their respective constituent physicians and other medical practitioners.

21.    Plaintiffs are further informed and believe and thereupon allege that in providing the services for care/noble/da&ar and DE LA LLANA, as alleged herein, RIVERA and co-conspirators, and each of them, acting both as authorized agents of SEERSOFT and in their personal capacities, together with Does 1 through 10, and each of them, without notice to and without the knowledge or consent of DE LA LLANA, or other physicians or medical practitioners at care/noble/da&ar, falsely and fraudulently modified without justification the medical billing codes used to classify diseases and related health problems, including mental, physical and behavioral disorders (herein, the "ICD-10 Codes"), in order to secure for themselves funds derived through inflated and false bills and/or invoices, and to convert and misappropriate for themselves the proceeds from Medicare, Medicaid and/or other insurance providers based on the medical services rendered by care/noble/da&ar, through its physicians and other medical practitioners.

22.    Defendants' fraudulent scheme to defraud Plaintiffs, and to abuse their position of trust and confidence, was devised and commenced in January 2019, and that it continues through the present. Plaintiffs are further informed and believe and thereupon allege that that during this time, Defendants, and each of them, have misappropriated and converted funds from Plaintiffs in an amount presently estimated to be at least Five Million Dollars ($5,000,000), subject to proof at the time of trial. Plaintiffs are further informed and believe and thereupon allege that in addition to the foregoing, Plaintiffs have suffered reputational and other damages presently estimated to be at least Five Million Dollars ($5,000,000). Prior to the time of trial, Plaintiffs will seek leave to amend this Complaint to set forth the total amounts misappropriated and converted by Defendants, and the total amount of Plaintiffs' compensatory, general and special damages.

23.    Pursuant to and in furtherance of their fraudulent scheme, Rivera and the other named and unnamed defendants, and each of them, stole patient files and records and more importantly redirected patients who were being treated by Dr. De La Llana or other in-house physicians who work for one or more of the clinics owned and operated by Plaintiffs.

9

23a.    Plaintiffs first became aware of Defendant's fraud, misappropriation, and conversion through information brought forward in February 2020, by one or more informants within Care/Noble/DA&AR.  Immediately thereafter, Plaintiffs terminated the services of Defendants.

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

(Against Defendants and Does 1 through 10)

24.    Plaintiffs reallege and incorporate herein by this reference as though fully set forth, each and every allegation contained in paragraphs 1 through 13a.

25.    By reason of the engagement by Plaintiffs, and the scope of services Defendants agreed to provide, as set forth above, SEERSOFT and RIVERA, and each of them, were Plaintiffs' agents, and Plaintiffs reposed trust and confidence in their integrity and fidelity.  At all times herein mentioned, Rivera and her coconspirators voluntarily accepted and assumed such confidence, thereby establishing a fiduciary relationship between Plaintiffs and Defendants.

26.    Plaintiffs are informed and believe and thereupon allege that SEERSOFT and RIVERA, and each of them, breached their fiduciary duties owed to Plaintiffs by falsely and fraudulently modifying, during the time period referred to above, without notice to Plaintiffs and without justification, the ICD-10 Codes used in the practice of Care/Noble/DA&AR in order to secure for themselves funds derived through inflated and false bills and/or invoices, and to convert and misappropriate for themselves the proceeds from Medicare, Medicaid and/or other insurance providers based on the medical services rendered by care/noble/da&ar, through its physicians and other medical practitioners.

27.    At all times herein mentioned, SEERSOFT and RIVERA, and each of them, also breached their fiduciary duties owed to Plaintiffs by failing to safeguard, in violation of applicable legal standards, including but not limited to the standards imposed under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), patient medical records and data, including medical conditions,

1   blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information,

2   and payment data. This failure subjects or may subject the physicians and medical practitioners who practice

3   through Plaintiffs, including Dr. Rose's Neutracuetical Compounding Trust, to liability, disciplinary action,

4   damage to reputation, and other serious harm.

        28.      By engaging in the activity and conduct alleged above, SEERSOFT and RIVERA,

5   and each of them, and Does 1 through 10, acted intentionally and in bad faith, derived improper benefits,

6   and knew that their activity and conduct was contrary to Plaintiffs' best interests.

7           29.      As a direct, legal and proximate result of the breach of fiduciary duties by

8   SEERSOFT and RIVERA, and Does 1 through 10, Plaintiffs have suffered detriment and incurred damages

9   in an amount to be determined at trial and presently estimated to be not less than Ten Million Dollars

($10,000,000).

10          30.      Plaintiffs are informed and believe and thereupon allege that SEERSOFT and

11  RIVERA and conspirators, and Does 1 through 10, and each of them, in doing the things alleged herein,

12  acted in bad faith, oppressively, and maliciously toward Plaintiffs, and with the intent to defraud Plaintiffs

13  and to injure them financially, so as to justify the imposition of punitive and exemplary damages against

14  Defendants, and Does 1 through 10, in an amount such as the jury should determine is sufficient to punish

and make an example of RIVERA and coconspirators, and Does 1 through 10, and each of them.

15          31.      As a direct and proximate result of the flagrant, patent breaches of fiduciary duties

16  alleged above, RIVERA wrongfully and without justification obtained ownership interests in entities

17  previously owned by DE LA LLANA, namely, Nutraceutical Compounding Trust and HPI, as defined

18  above. By reason of the foregoing, DE LA LLANA is entitled to and hereby requests an order imposing a

19  constructive trust and/or equitable lien in his favor as to the equity interests of Rivera and her coconspirator

20  Defendants in any and all assets in which they currently hold legal title that may have been acquired by

funds transferred from Plaintiffs or Plaintiffs' businesses, including her interest in Los Angeles Clinica

21  Medica General and HPI.

22          32.      WHEREFORE, Plaintiffs pray for judgment against Defendants and Does 1

23

11

through 10, and each of them, as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

### UNFAIR COMPETITION – VIOLATION OF UNIFORM TRADE SECRETS ACT

### (CALIFORNIA CIVIL CODE SECTION 3426 ET SEQ.)

(Against SEERSOFT, RIVERA, DR. ALFARO and Does 1 through 10)

33. Plaintiffs reallege and incorporate herein by this reference as though fully set forth, each and every allegation contained in paragraphs 1 through 32.

34. At all times herein mentioned, Rivera's AND Dr. Alfaro's theft, embezzlement and redirection of patient files and patients who were formerly treating with Dr. De La Llana or physicians under his direction and control, or from Plaintiffs' medical facilities or practices, to the medical practice owned and operated by her coconspirator and sister, Dr. Alfaro, constitutes "unfair competition" under the common law and violates the Uniform Trade Secrets Act, Civil Code section 3426 et seq.

34a. Plaintiffs are informed and believe and thereupon allege that the misappropriation of patient files and patients by RIVERA, SEERSOFT, Dr. Alfaro and Does 1 through 10, and each of them, damaged Plaintiffs in an amount of at least Five Million Dollars ($5,000,000).

35. Plaintiffs are further informed and believe and thereupon allege that such unfair competition occurred between January 2019, and the present, during which time Plaintiffs reasonably relied upon SEERSOFT, RIVERA, and Does 1 through 10, and each of them, to provide for Plaintiffs services through which bills and/or invoices arising from services rendered by Plaintiffs and their respective constituent physicians and other medical practitioners, including Dr. Rose's Neutracuetical Compounding Trust, were submitted to governmental agencies at the State and Federal levels, including Medicare and Medicaid.

36.     Plaintiffs are further informed and believe and thereupon allege that SEERSOFT, RIVERA, and Does 1 through 10, and each of them, acted unlawfully, willfully, and knowingly to convert funds belonging to Plaintiffs to their own use or purpose.

37.     As a direct, legal and proximate result of the acts of misappropriation of patient lists and files and patients by Seersoft, RIVERA and Dr. Alfaro,, as alleged herein, Plaintiffs have suffered damages in an amount to be determined at trial and presently estimated to be not less than five million dollars ($5,000,000).

38.     Plaintiffs are informed and believe and thereupon allege that Seersoft, RIVERA, Alfaro, and Does 1 through 10, and each of them, in doing the things alleged herein, acted in bad faith, oppressively, and maliciously toward Plaintiffs, and with the intent to defraud Plaintiffs and to injure them financially, so as to justify the imposition of punitive and exemplary damages against Defendants, and Does 1 through 10, in an amount such as the jury should determine is sufficient to punish and make an example of SEERSOFT, RIVERA, Alfaro, their coconspirators, and Does 1 through 10, and each of them.

39.     WHEREFORE, Plaintiffs pray for judgment against SEERSOFT, RIVERA and co-conspirators, and Does 1 through 10, and each of them, as set forth in the Prayer for Relief below.

## THIRD CAUSE OF ACTION

## CONVERSION

(Against Defendants and Does 1 through 10)

40.     Plaintiffs reallege and incorporate herein by this reference as though fully set forth each and every allegation contained in paragraphs 1 through 29.

41.     Defendants' intentional misappropriation of Plaintiffs' patients, patient files, bank deposits and other personal property also constitutes actionable conversion under California law.

42.     As a direct and proximate result of defendants' conversion, Plaintiffs have been damaged in an amount in excess of $5,000,000, the exact amount to be shown at the time of trial in accordance with proof.

## FOURTH CAUSE OF ACTION

13

**FRAUD AND DECEIT**

(Against Defendants and Does 1 through 10)

43.    Plaintiffs reallege and incorporate herein by this reference as though fully set forth each and every allegation contained in paragraphs 1 through 42.

44.    Beginning in January 2019, and continuing through the present, SEERSOFT and RIVERA, and each of them, intentionally and without disclosure to Plaintiffs, falsely and without justification or any basis, modified the ICD-10 Codes used in the practice of Care/Noble/DA&AR in order to secure for themselves funds derived through inflated and false bills and/or invoices, and to misappropriate for themselves the proceeds from Medicare, Medicaid and/or other insurance providers based on the medical services rendered by Care/Noble/DA&AR, through its physicians and other medical practitioners.

45.    Beginning in January 2019, and continuing through the present, SEERSOFT and RIVERA, and each of them, without disclosure to Plaintiffs, failed to safeguard, in violation of applicable legal standards, including but not limited to the standards imposed under HIPAA, patient medical records and data, including medical conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information, and/or payment data.  This failure subjects or may subject the physicians and medical practitioners who practice through Care/noble/da&ar, including Dr. Neutracuetical compounding trust, to liability, disciplinary action, damage to reputation, and other serious harm.

46.    By reason of their status as agents for care/noble/da&ar, and by reason of their position of trust and confidence, as alleged above, SEERSOFT, RIVERA, and Does 1 through 10, and each of them, had a duty to disclose to Plaintiffs all material facts with respect to the following services purportedly rendered by SEERSOFT and RIVERA for and on behalf of care/noble/da&ar: (i) billing governmental agencies at the State and Federal levels, including Medicare and Medicaid, for services rendered by physicians or other medical practitioners operating through Care/Noble/DA&AR; and (ii) gathering and safeguarding for Care/Noble/DA&AR, and its constituent physicians and medical practitioners, patient medical records and data, including medical conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information, and payment data.

47.  Plaintiffs are informed and believe and thereupon allege that between January 2019, and continuing through the present, SEERSOFT, RIVERA, and Does 1 through 10, and each of them, failed to disclose and intentionally concealed from Plaintiffs that: (i) SEERSOFT, RIVERA, and Does 1 through 10, and each of them, without disclosure to Plaintiffs or either of them, falsely and without justification or any basis, modified the ICD-10 Codes used in the practice of care/noble/da&ar in order to secure for themselves funds derived through inflated and false bills and/or invoices, and to misappropriate for themselves the proceeds from Medicare, Medicaid and/or other insurance providers based on the medical services rendered by Care/Noble/da&ar, through its physicians and other medical practitioners; and (ii) failed to safeguard, in violation of applicable legal standards, including but not limited to the standards imposed under HIPAA, patient medical records and data, including medical conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information, and/or payment data, thereby subjecting the physicians and medical practitioners who practice through care/noble/da&ar, including professionals and consultants from Neutraceutical Compounding Trust, to actual or potential liability, disciplinary action, damage to reputation, and other serious harm.

48.  Plaintiffs are informed and believe and thereupon allege that when SEERSOFT, RIVERA, and Does 1 through 10, and each them, engaged in fraud through concealment and/or misrepresentations, as alleged above, they did so deliberately and with the intent to defraud Plaintiffs.

49.  In justifiable reliance on the above-described non disclosures and/or misrepresentations, Plaintiffs were induced to secure the services and continue using the services of Defendants, as alleged above.

50.  At the time of the above-described non disclosures and misrepresentations made by SEERSOFT, RIVERA, and Does 1 through 10, and each of them, Plaintiffs were not aware of the fraudulent and deceitful scheme of SEERSOFT, RIVERA, and Does 1 through 10, and believed that SEERSOFT, RIVERA, and Doe 1 through 10, and each of them, were trusted agents and fiduciaries.

51.     As alleged above, Plaintiffs became aware of the fraud and deceit of SEERSOFT, RIVERA, and Does 1 through 10, and each of them, through information brought forward by one or more informants.  Immediately thereafter, Plaintiffs terminated the services of SEERSOFT and RIVERA.

52.     As a direct, legal and proximate result of the above-described conduct, Plaintiffs have suffered monetary damages in an amount to be determined at trial and presently estimated to be not less than Ten Million Dollars ($10,000,000).

53.     Plaintiffs are informed and believe and thereupon allege that SEERSOFT, RIVERA, and Does 1 through 10, and each of them, in doing the things alleged herein, acted in bad faith, oppressively, and maliciously toward Plaintiffs, and with the intent to defraud Plaintiffs and to injure them financially, so as to justify the imposition of punitive and exemplary damages against SEERSOFT, RIVERA, and Does 1 through 10, in an amount such as the jury should determine is sufficient to punish and make an example of defendants personally, and Does 1 through 10, and each of them.

41.     Plaintiffs are further informed and believes and thereupon allege that by reason of the fraud and deceit, as alleged above, Defendants wrongfully and without justification obtained ownership interests in entities previously owned by Dr. Neutracuetical compounding trust, namely, LACMG and HPI, as defined above.  By reason of the foregoing, Dr. Neutracuetical compounding trust is entitled to and hereby requests an order imposing a constructive trust and/or equitable lien in his favor as to the equity interests of the Rivera, and each or all of them, in LACMG and HPI.

42.     WHEREFORE, Plaintiffs pray for judgment against Defendants and Does 1 through 10, and each of them, as set forth in the Prayer for Relief below.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

(Against SEERSOFT, RIVERA, and Does 1 through 10)

43.     Plaintiffs reallege and incorporate herein by this reference as though fully set forth each and every allegation contained in paragraphs 1 through 42.

16

44.    In undertaking to provide for Plaintiffs the services described above, SEERSOFT, RIVERA, and Does 1 through 10, and each of them, owed Plaintiffs and each of them, a duty of reasonable care, consistent with the standard applicable based on custom and practice in the medical field. That standard required that SEERSOFT, RIVERA, and Doe 1 through 10, and each of them, perform their work with reasonable care, competence, skill, expedience, integrity and faithfulness.

45.    Plaintiffs, on the one hand, and SEERSOFT and RIVERA, on the other hand, stood in a relationship of trust and confidence, as alleged above.

46.    Plaintiffs are informed and believe and thereupon allege that commencing in January 2019, and continuing through the present, SEERSOFT, RIVERA, and Does 1 through 10, and each of them, breached their duties of reasonable care owed to Plaintiffs in each of the following ways, among others:

(a)    By falsely and fraudulently modifying, during the time period referred to above, without notice to Plaintiffs and without justification, the ICD-10 Codes used in the practice of care/noble/da&ar in order to secure for themselves funds derived through inflated and false bills and/or invoices, and to convert and misappropriate for themselves the proceeds from Medicare, Medicaid and/or other insurance providers based on the medical services rendered by Care/Noble/DA&AR through its physicians and other medical practitioners; and

(b)    By failing to safeguard, in violation of applicable legal standards, including but not limited to the standards imposed under HIPAA, patient medical records and data, including medical conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance information, and/or payment data, thereby subjecting the physicians and medical practitioners who practice through Care/Noble/DA&AR, including Dr. Rose's Neutracuetical Compounding trust, to actual or potential liability, disciplinary action, damage to reputation, and other serious harm.

54.    As a direct, legal and proximate result of the negligence of SEERSOFT, RIVERA, and Does 1 through 10, and each of them, as alleged above, Plaintiffs and each of them have suffered

1  monetary and other damages in an amount to be determined at trial and presently estimated to be at least

2  Ten Million Dollars ($10,000,000).

3          55.    WHEREFORE, Plaintiffs pray for judgment against SEERSOFT,  RIVERA, and

   Does 1 through 10, and each of them, as set forth in the Prayer for Relief below.

4                                **FIFTH CAUSE OF ACTION**

5                                **MONEY HAD AND RECEIVED**

6                        (Against Defendants and Does 1 through 10)

7          56.    Plaintiffs reallege and incorporate herein by this reference as though fully set forth

8  each and every allegation contained in paragraphs 1 through 55.

9          57.    Plaintiffs are informed and believe and thereupon allege that from and after January

   2019, and continuing through the present, Defendants and Does 1 through 10, and each of them, became

10 indebted to Plaintiffs in the sum of at least Five Million Dollars ($5,000,000) for money had and received

11 by Defendants, and Does 1 through 10, for the use and benefit of Plaintiffs.

12         58.    Neither the whole nor any part of this sum has been paid. Although demand for the

13 balance has been made, it has not been paid and there is now due, owing and unpaid the sum of at least Five

14 Million Dollars ($5,000,000), together with interest on the unpaid balance according to proof at the time of

   trial at the rate provided by law.

15         59.    WHEREFORE, Plaintiffs pray for judgment against Defendants and Does 1

16 through 10, and each of them, as set forth in the Prayer for Relief below.

17                                **SIXTH CAUSE OF ACTION**

18              **UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES**

19                 **BUSINESS AND PROFESSIONS CODE SECTION 17200**

20                   (Against SEERSOFT, RIVERA, and Does 1 through 10)

21         60.    Plaintiffs reallege and incorporate herein by this reference as though fully set forth

   each and every allegation contained in paragraphs 1 through 52.

22         61.    The wrongful and illegal actions taken by Rivera, Dr. Alfaro, and the coconspirator

23
                                         18

1    defendants constitute a pattern of unlawful business practices and Defendants, and each of them, are

2    currently engaged in ongoing and continuous unlawful, unfair, and fraudulent business acts or practices.

3           62.    Plaintiffs are informed and believe and thereupon allege that the business acts or

4    practices of SEERSOFT, RIVERA, and Does 1 through 10, and each of them, are unlawful, within the

     meaning of Business and Professions Code Section 17200, because they constitute violations of the billing

5    standards imposed by Medicare, Medicaid and/or other insurance providers, and because they violate

6    HIPAA, as alleged above.

7           63.    Plaintiffs are informed and believe and thereupon allege that SEERSOFT,

8    RIVERA, and Does 1 through 10, and each of them, have engaged in unfair and fraudulent business

     practices, within the meaning of Business and Professions Code Section 17200:

9           (a)    By falsely and fraudulently modifying, during the time period referred to above,

10   without notice to Plaintiffs and without justification, the ICD-10 Codes used in the practice of

11   care/noble/da&ar in order to secure for themselves funds derived through inflated and false bills and/or

12   invoices, and to convert and misappropriate for themselves the proceeds from Medicare, Medicaid and/or

13   other insurance providers based on the medical services rendered by Care/Noble/DA&AR, through its

14   physicians and other medical practitioners; and

15          (b)    By failing to safeguard, in violation of applicable legal standards, including but not

16   limited to the standards imposed under HIPAA, patient medical records and data, including medical

     conditions, blood test results, names, addresses, dates of birth, Social Security numbers, health insurance

17   information, and/or payment data, thereby subjecting the physicians and medical practitioners who practice

18   through Care/Noble/DA&AR, including Dr. Rose's Neutracuetical Compounding Trust, to actual or

19   potential liability, disciplinary action, damage to reputation, and other serious harm.

20          57.    By reason of the foregoing, Plaintiffs seek as remedies from SEERSOFT, RIVERA,

21   and Does 1 through 10, and each of them, restitution of all funds misappropriated, as alleged above, and

     disgorgement of all ill-gotten gains, in an amount subject to proof at the time of trial and presently estimated

22   to total Five Million Dollars ($5,000,000).

23

1    58.    WHEREFORE, Plaintiffs pray for judgment against SEERSOFT, RIVERA, and

2    Does 1 through 10, and each of them, as set forth in the Prayer for Relief below.

3                              **PRAYER FOR RELIEF**

4    WHEREFORE, Plaintiffs pray for judgment against Defendants, and Does 1 through 10, inclusive, as follows:

5    1.    On the First Cause of Action:

6    (a)    For compensatory, general and/or special damages in an amount to be proven at

7    trial and presently estimated to be not less than ten million dollars ($10,000,000);

8    (b)    For punitive and exemplary damages;

9    (c)    For an order imposing a constructive trust and/or equitable lien in favor of DE LA

10    LLANA as to his ownership interests in Care Plus Medical Group and related entities, as against RIVERA, and each or any of them.

11    (d)    For attorneys' fees in an amount to be proven;

12    (e)    For prejudgment interest;

13    (f)    For costs of suit incurred herein; and

14    (g)    For such other and further relief as the Court may deem just and proper.

    2.    On the Second Cause of Action:

15    (a)    For compensatory, general and/or special damages in an amount to be proven at

16    trial and presently estimated to be not less than Five Million Dollars ($5,000,000);

17    (b)    For punitive and exemplary damages;

18    (c)    For prejudgment interest;

19    (d)    For costs of suit incurred herein; and

20    (e)    For such other and further relief as the Court may deem just and proper.

    3.    On the Third Cause of Action:

21    (a)    For compensatory, general and/or special damages in an amount to be proven at

22    trial and presently estimated to be not less than Ten Million Dollars ($10,000,000);

23

20

1          (b)      For punitive and exemplary damages;

2          (c)      For an order imposing a constructive trust and/or equitable lien in favor of Dr.

3    Neutracuetical compounding trust as to his ownership interests in Los Angeles Clinica Medica General and

4    HPI, as against RIVERA, and each or any of them;

           (d)      For prejudgment interest;

5          (e)      For costs of suit incurred herein; and

6          (f)      For such other and further relief as the Court may deem just and proper.

7     4.      On the Fourth Cause of Action:

8          (a)      For compensatory, general and/or special damages in an amount to be proven at

9    trial and presently estimated to be not less than Ten Million Dollars ($10,000,000);

           (b)      For costs of suit incurred herein;

10         (c)      For prejudgment interest; and

11         (d)      For such other and further relief as the Court may deem just and proper.

12    5.      On the Fifth Cause of Action:

13         (a)      For compensatory, general and/or special damages in an amount to be proven at

14   trial and presently estimated to be not less than Ten Million Dollars ($10,000,000);

           (b)      For costs of suit incurred herein;

15         (c)      For prejudgment interest; and

16         (d)      For such other and further relief as the Court may deem just and proper.

17    6.      On the Fifth Cause of Action:

18         (a)      For disgorgement and restitution in an amount to be proven at trial and presently

19   estimated to be not less than Five Million Dollars ($5,000,000);

           (b)      For costs of suit incurred herein;

20         (c)      For prejudgment interest; and

21         (d)      For such other and further relief as the Court may deem just and proper.

22

23

1

2

3

October 29, 2021

4
LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporation

5

6
By: _____
Michael E. Reznick

7
Attorney for Plaintiffs JOSE DE LALLANA, M.D.,
Individually and as Co-Trustee of CARE PLUS

8
HOLDINGS GROUP TRUST, a Nevada Trust and
NOBLEQUEST HEALTH FOUNDATION
RECOVERY TRUST, a Nevada Trust; CARE PLUS

9
MEDICAL CORPORATION, a California corporation;
NOBLEQUEST HEALTH FOUNDATION, INC., a

10
California nonprofit corporation; DA &AR HOSPICE
CARE, INC., a California corporation; and KELLIE
WILLIAMS, as Co-Trustee of THE PATENT AND

11
TRADEMARK FUNDING HEDGE TRUST, a Nevada
Trust

12

13

14

15

16

17

18

19

20

21

22

23

22

# EXHIBIT E

**From:** Hatty.Yip@usdoj.gov,

   **To:** reznagoura@aol.com,

**Subject:** RE: [EXTERNAL] INFORMAL SUMMARY PROVIDED PURSUANT TO RULE 403 OF THE FEDERAL RULES OF EVIDENCE

**Date:** Wed, Dec 29, 2021 2:28 pm

Dear Counsel:

Again, I read through your email and the attached complaint and none of the information provides me with the basic background information about the Debtor I requested two weeks ago.

Specifically:

1. **Where is DA & AR Hospice Care, Inc., the hospice, actually located?** You previously mentioned two locations. I need the address of all locations.
2. How many patients are currently at the hospice?
3. Is the hospice operating in compliance with local health and other regulations?
4. How many employees are at the hospice?

You have filed a facesheet petition with no Schedules to date. The U.S. Trustee is deeply concerned that despite multiple requests, we cannot even get the address of the Debtor's hospice locations. I visited the Debtor's address as stated on your petition, and there is no hospice located at that address. Please provide me with the answer to the questions above immediately. Thank you.

--Hatty Yip

**From:** Reznagoura <reznagoura@aol.com>
**Sent:** Wednesday, December 29, 2021 1:02 PM
**To:** Yip, Hatty (USTP) <Hatty.Yip@usdoj.gov>
**Cc:** Reznagoura <reznagoura@aol.com>
**Subject:** [EXTERNAL] INFORMAL SUMMARY PROVIDED PURSUANT TO RULE 403 OF THE FEDERAL RULES OF EVIDENCE

Dear Counsel:

Pursuant to your request to provide you with an informal "summary" explaining some of the questions you had about the bankruptcy filing and related issues in the matter In re DA & AR Hospice Care Inc., Debtor, Case No. 2:21-bk-19219-ER (the "Bankruptcy"), please be advised that in order to avoid potential conflict issues (such as me potentially being a witness to whatever we have discussed) as well as related matters that could expose my clients and their officers to potential embarrassment at best and liability to third parties at worst, please be advised that any information contained herein that is not publicly available will be considered to be an "offer to compromise" under Rule 403 of the Federal Rules of Evidence (since you are receiving the information requested voluntarily and sooner than you would otherwise be entitled to receive under the Bankruptcy Rules, for example, by way of the scheduled informal interview of the DIP or 2004 examination of its officers).

Toward that end, attached hereto is a conformed copy of the Los Angeles County Superior Court Complaint in the action entitled JOSE DE LA LALLANA, M.D., Individually and as Co-Trustee of CARE PLUS HOLDINGS GROUP TRUST, a Nevada Trust; NOBLEQUEST HEALTH FOUNDATION RECOVERY TRUST, a Nevada Trust, CARE PLUS MEDICAL CORPORATION, a California corporation; DA & AR HOSPICE CARE, INC., a California corporation ("DA" or the "Company")
or "Debtor"); NOBLEQUEST HEALTH FOUNDATION, INC., a California nonprofit corporation; and KELLIE WILLIAMS, as Co-Trustee of THE PATENT AND TRADEMARK FUNDING HEDGE TRUST, a Nevada Trust, Plaintiffs vs. AILENE RIVERA, an individual ("Rivera"); NEUTRACUETICAL COMPOUNDING TRUST, a Nevada Trust; PEER, INC., a California corporation; SEERSOFT, INC, a California corporation; MARIA VICTORIA ALFARO, M.D. ("Alfaro") (Rivera's sister, a medical doctor to whom the corporation's recently created "Special Litigation Committee ("SLC") discovered Rivera used as a conduit and "dump site" for DA & AR patients to manage and care for without the knowledge, permission or consent of the company's salaried physicians whose patient files were wrongfully diverted by Rivera for her own selfish gain.

In the meantime, Chase Bank, which maintains various accounts and the bank accounts into which payments from insurers, the federal government (e.g., "Medicare") and California (e.g., Medi Cal) were formerly deposited, was notified by Rivera (who surreptitiously filed an amended Statement of Information ("SOI") with the California Secretary of State that intentionally and falsely identified Ailene as the Chief Executive Officer rather than the rightful owner, licensed physician Jose De La Lana ("Dr. L"), froze all of the Company's accounts and is now seeking bankruptcy court approval (via a relief from stay motion) to file a state or federal interpleader. I have not yet reviewed it but understand that Chase has also filed a motion with the bankruptcy court and more ominously has threatened to release the funds on deposit at chase to Rivera - the same Rivera who is illegally diverting and misappropriating to her physician sister and accomplice patients who are identified by Medicare and MediCal as patients of the Debtor, and the same Rivera who Chase knows or should know is not a licensed physician and thus does not and could not own the Debtor as a matter of California law.

Accordingly, we could certainly use and appreciate your assistance and help in doing whatever we can to enjoin Chase from transferring the Debtor's funds to Ailene and her nominee -- the alleged embezzler who has caused the Company's current financial distress and if left unabated will destroy the goodwill and other intangible assets that the Company spent years developing. Simply stated, once you recognize that Rivera cannot as a matter of law own, control or operate the Company despite what the SOI or any other forged or dummied up documents say because she is not currently and has never been a licensed California physician, the remaining claims she appears to be asserting also do not ring true.

I look forward to working with you on this interesting Chapter 5 case. Please keep in mind that as the SLC's investigation continues and discovers additional potentially responsible parties, it may be more prudent to convert the case to a Chapter 11 (if the SLC determine that things are far worse than they appear now) and if necessary, a liquidation proceeding (Chapter 7). I will keep you advised and send you the documents regarding Dr. Hargrove Brown's appointment as soon as I receive them, hopefully by the end of the day.

I believe that the attached Complaint will answer virtually all of the questions you had about the business and other financial relationships between NobleQuest, Care Plus and the other names and persons who are identified in the Complaint, as well as the conflicting claims to management and control of the Company. Please note that I have asked current management for a copy of the Board Resolution and recommendation with respect to Rivera, the formation of the SLC and the Board's subsequent decision to appoint on an interim basis Dr. Hargrove as the Company's CEO (while the SLC's investigation continues).

While you and I last spoke you said you were concerned because of apparent conflicting claims of management and control of the Debtor. However, this concern should dissipate once you Rivera -- the alleged crook who is making the claim of ownership and control of the Company -- is not and has never been a licensed California physician but rather is a licensed physical therapist. Thus, as a matter of law, Rivera cannot own, operate and control a California medical corporation regardless of her claims, and no matter how many documents she forges (like the bogus SOI) or creates out of whole cloth (like other phony or dummy corporate documents) dummies up.

Please give me a call if you have any other questions prior to the scheduled interview with the Debtor. If you need or want a continuance to review the Complaint, amended schedules and other documents that I am planning to email you, please let me know.

Thank you again for your patience. I look forward to working with you.

Best,

Mike


**LAW OFFICES OF MICHAEL E. REZNICK**

**A PROFESSIONAL CORPORATION**

**LOS ANGELES • NEW YORK • CHICAGO**


283 Ocho Rios Way

Oak Park, California 91377

21700 Oxnard Street, Suite 1160
Warner Center, California 91367

295 Madison Ave., 12th Floor

New York, New York 10017


40 E. Chicago Ave., Suite 386
Chicago, Illinois 60611-2026


Tel:      818.888.5900

Fax:      818.888.5947

Cell:     818.437.5630


www.MichaelReznickLaw.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

283 Ocho Rios Way, Oak Park, California 91377

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF MICHAEL E. REZNICK IN SUPPORT OF OPPOSITION TO U.S.TRUSTEE'S APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE: (1) DIRECTING MICHAEL E. REZNICK AND YVETTE HARGROVE-BROWN TO PERSONALLY APPEAR TO EXPLAIN WHY THIS BANKRUPTCY WAS NOT FIOLED IN BAD FAITH [AND OTHER RELATED RELIEF] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/27/2022_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

jpftrustee@lnbyg.com, jpf@trustesolutions.net; tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com; steinberg@gtlaw.com;lpearsalit@gtlaw.com; .ustregion16.la.ecf@usdoj.gov;hatty.yip@usdoj.gov; hatty.k.yip@usdoj.gov;

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
NEXT DAY COURTESY COPY LODGED WITH THE COURT BY LEAVING IT IN THE BOX OUTSIDE OF THE COURTROOM

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/27/2022 | Michael E. Reznick | /s/Michael E. Reznick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**