

**FILED & ENTERED**

**JUN 27 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:   DA & AR Hospice Care, Inc.,<br>            Debtor. | Case No.: 2:21-bk-19219-ER<br>Chapter:   11<br><br>**MEMORANDUM OF DECISION: (1) FINDING THAT MICHAEL E. REZNICK COMMITTED FRAUD ON THE COURT BY FILING A BANKRUPTCY PETITION ON BEHALF OF DA & AR HOSPICE CARE, INC. WITHOUT AUTHORIZATION; (2) REFERRING MICHAEL E. REZNICK TO THE BANKRUPTCY COURT'S DISCIPLINARY PANEL PURSUANT TO SIXTH AMENDED GENERAL ORDER 96-05; AND (3) IMPOSING RE-FILING RESTRICTIONS UPON YVETTE HARGROVE-BROWN**<br><br>[RELATES TO DOC. NO. 30]<br><br>Date:      June 27, 2022<br>Time:     10:00 a.m.<br>Location: Courtroom 1568<br>              **(Personal Appearances Required)**<br>              Roybal Federal Building<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

   At the above-captioned date and time, the Court conducted a hearing on the *Order Granting United States Trustee's Application for Issuance of Order to Show Cause and Issuing Order to Show Cause: (1) Directing Michael E. Reznick and Yvette Hargrove-Brown to Personally*

*Appear to Explain Why this Bankruptcy Was Not Filed in Bad Faith; (2) Why Michael E. Reznick Should Not be Required to Disgorge All Fees Received Pursuant to 11 U.S.C. § 329; (3) Why Michael E. Reznick Should Not Be Referred to the Bankruptcy Court Attorney Disciplinary Panel for Filing a Fraudulent Bankruptcy Case; and (4) Why Yvette Hargrove-Brown Should Not be Ordered to Pay the Subchapter V Trustee's Fees Incurred in the Instant Case and Barred from Future Bankruptcy Filings* [Doc. No. 30] (the "OSC").[1] Attorney Michael E. Reznick

---

[1] The Court considered the following papers in adjudicating this matter:
1) Order Granting United States Trustee's Application for Issuance of Order to Show Cause and Issuing Order to Show Cause: (1) Directing Michael E. Reznick and Yvette Hargrove-Brown to Personally Appear to Explain Why this Bankruptcy Was Not Filed in Bad Faith; (2) Why Michael E. Reznick Should Not Be Required to Disgorge All Fees Received Pursuant to 11 U.S.C. § 329; (3) Why Michael E. Reznick Should Not Be Referred to the Bankruptcy Court Attorney Disciplinary Panel for Filing a Fraudulent Bankruptcy Case; and (4) Why Yvette-Hargrove Brown Should Not Be Ordered to Pay the Subchapter V Trustee's Fees Incurred in the Instant Case and Barred from Future Bankruptcy Filings [Doc. No. 30] (the "OSC");
   a) United States Trustee's Notice of Application and Application for Issuance of Order to Show Cause: (1) Directing Michael E. Reznick and Yvette Hargrove-Brown to Personally Appear to Explain Why this Bankruptcy Was Not Filed in Bad Faith; (2) Why Michael E. Reznick Should Not Be Required to Disgorge All Fees Received Pursuant to 11 U.S.C. § 329; (3) Why Michael E. Reznick Should Not Be Referred to the Bankruptcy Court Attorney Disciplinary Panel for Filing a Fraudulent Bankruptcy Case; and (4) Why Yvette-Hargrove Brown Should Not Be Ordered to Pay the Subchapter V Trustee's Fees Incurred in the Instant Case and Barred from Future Bankruptcy Filings [Doc. No. 22] (the "Application for Issuance of OSC");
   b) Request for Judicial Notice in Support of Application for Issuance of OSC [Doc. No. 24];
   c) Order: (1) Requiring United States Trustee to File Exhibits Omitted from the Declaration of Ailene Rivera By No Later than May 12, 2022 and (2) Continuing Hearing on Order to Show Cause from May 11, 2022 at 10:00 a.m. to June 8, 2022 at 10:00 a.m. [Doc. No. 49];
   d) United States Trustee's Attachments [Doc. No. 50];
   e) Order Continuing Hearings on Order to Show Cause and Motion to Strike from June 8, 2022 at 10:00 a.m. to June 27, 2022 at 10:00 a.m. [Doc. No. 58];
2) Declaration of Michael E. Reznick in Support of Opposition to [OSC] [Doc. No. 41];
3) Declaration of Yvette Hargrove-Brown in Support of Opposition to [OSC] [Doc. No. 42];
4) Declaration of James A. Dumas Re Order to Show Cause Against Attorney Michael E. Reznick and Related Matters [Doc. No. 43];
5) Reply of United States Trustee to Opposition to Order to Show Cause [Doc. No. 44];
6) Omnibus Response by DA & AR Hospice Care, Inc. Re: Declarations of Michael E. Reznick and Yvette Hargrove-Brown Re: Authority to File Bankruptcy Petition [Doc. No. 45];
   a) Supplement [to Omnibus Response] [Doc. No. 53];
7) Motion to Strike May 4, 2022 Declaration of Attorney James Dumas in its Entirety Pursuant to Rules 12(f) and 11(b) of the Federal Rules of Civil Procedure and Rule 3.10 of the California Rules of Professional Conduct [Doc. No. 46];
8) Opposition to Strike Declaration of James A. Dumas [Doc. No. 48];
9) Supplemental Declaration of Dr. Yvette Hargrove-Brown in Support of Opposition to [OSC] [Doc. No. 54];
10) Supplemental and Joint Opposition to OSC by Debtor, Debtor's Counsel and Yvette Hargrove-Brown and Response Limited to Court's May 10, 2022 Order Permitting Debtor, Debtor's Counsel and Yvette Hargrove-Brown to File Supplemental Opposition to the OSC Limited to Addressing Material Presented in Exhibits that the US Trustee Deliberately Redacted and Withheld from Debtor's Counsel in Her Application for the OSC [Doc. No. 55];
    a) Errata to Supplemental and Joint Opposition to OSC by Debtor, Debtor's Counsel and Yvette Hargrove-Brown and Response Limited to Court's May 10, 2022 Order Permitting Debtor, Debtor's Counsel and Yvette Hargrove-Brown to File Supplemental Opposition to the OSC Limited to Addressing Material Presented in Exhibits that the US Trustee Deliberately Redacted and Withheld from Debtor's Counsel in Her Application for the OSC [Doc. No. 56];
11) United States Trustee's Reply to Supplemental Opposition [Doc. No. 57].

("Reznick") personally appeared at the hearing and responded to the findings set forth in the Court's tentative ruling.

For the reasons set forth below, the Court finds that Reznick committed fraud on the Court by filing a bankruptcy petition on behalf of DA & AR Hospice Care, Inc. (the "Hospice") without authorization to do so. Pursuant to General Order 96-05, the Court will refer Reznick to the Bankruptcy Court's Disciplinary Panel. This Memorandum of Decision shall constitute the Statement of Cause required by General Order 96-05. The Court will also impose re-filing restrictions upon Dr. Yvette Hargrove-Brown ("Hargrove-Brown").

## I. Facts and Summary of Pleadings

On December 14, 2021, Reznick caused the Hospice to file a face-sheet voluntary Chapter 11 petition. The petition was signed by Hargrove-Brown, who purported to be the "president" of the Hospice. On January 25, 2022, the Court dismissed the Hospice's case because it had failed to timely file its schedules. Doc. No. 15.

On February 23, 2022, upon the application of the United States Trustee (the "UST"), the Court issued the OSC against Reznick and Hargrove-Brown. In its application for issuance of the OSC (the "Application for OSC"), the UST stated that it was "seriously concerned that the instant bankruptcy was filed in bad faith as part of a fraudulent scheme to defraud the actual owners and managers of the [Hospice]," and that "[d]espite numerous opportunities, Hargrove-Brown and [Reznick] have provided nothing to show that this was a legitimate bankruptcy filed in good faith." Doc. No. 22 at 7. The OSC requires both Reznick and Hargrove-Brown to personally appear. The requirements imposed upon Reznick and Hargrove-Brown by the OSC are as follows:

1) Both Reznick and Hargrove-Brown must show cause why the Hospice's bankruptcy case was not filed in bad faith.
2) Reznick must (a) show cause why he should not be referred to the Bankruptcy Court's Attorney Disciplinary Panel for filing a fraudulent bankruptcy case, pursuant to General Order 96-05 and (b) show cause why he should not be required to disgorge $15,000 in fees received for filing the bankruptcy.
3) Hargrove-Brown must (a) show cause why she should not be required to pay the fees incurred by the Subchapter V Trustee and (a) show cause why she should not be barred from filing a new bankruptcy petition on behalf of any other entity.

**Summary of Papers Filed in Response to the OSC**

Reznick testifies that during his representation of NobleQuest Health Foundation, Inc. ("NobleQuest"), an entity which Reznick asserts is related to the Hospice, he discovered that "[Ailene] Rivera and others employed by or involve with NobleQuest, its parent Care Plus Medical Corporation, the [Hospice] and other related or affiliated 'IPAs' (independent physician associations) had perpetrated and were still perpetrating a massive embezzlement scheme against these medical establishments." Reznick Decl. [Doc. No. 41] at ¶ 5. He asserts that the Hospice is "owned by a medical doctor, Jose De La Llana," and that "as a matter of law, Rivera cannot be a '50 percent shareholder' of the [Hospice] since she is not a licensed California physician or medical doctor." *Id.* at ¶¶ 3–4. He claims that "Rivera and her cronies who participated in her criminal enterprise removed and stole any and all pertinent files containing corporate records and

other critical documents pertaining to ownership and control … from the [Hospice's] premises in the dark of night ….” *Id.* at ¶ 7.

Reznick states that in order to address Rivera's alleged embezzlement, he filed an action against Rivera and others in the Los Angeles Superior Court. *Id.* at ¶ 8. He further testifies that at the time he signed the Hospice's voluntary petition, the Hospice "was genuinely 'insolvent'" because JPMorgan Chase Bank, N.A. ("Chase") had frozen all the funds in the Hospice's bank account. *Id.* at ¶¶ 8–10. According to Reznick, the petition was not filed in bad faith, but instead was motivated by the following legitimate objectives:

> When I signed and filed the Petition, I was cautiously optimistic that I would also be able to convince Chase to unfreeze the [Hospice] and other related businesses' deposit accounts so the [Hospice] could continue to operate its business while the litigation continued…. My sole intent when I signed the Petition was to seek a discharge in good faith of my client—whom I believed then and now to be an honest debtor—if it became necessary after litigating the [Hospice's] claims against Rivera due to the massive embezzlement she orchestrated, as well as Rivera's bogus and unlawful claims to rightful ownership. I also intended to file the State Action as an adversary proceeding, hopefully with the support of and assistance from the Trustee and perhaps a medical ombudsman. Alternatively, I planned to consider obtaining relief from the automatic stay and simply prosecuting the State Action against Rivera.

*Id.* at ¶ 10.

Ailene Rivera ("Rivera"), Paul Laurel ("Laurel"), and Rosalie Manuel ("Manuel") submitted declarations asserting that Reznick was not authorized to cause the Hospice to seek bankruptcy protection. Rivera, Laurel, and Manuel testify that the Hospice's ownership structure is as follows:

- Rivera—President and 50% shareholder
- Laurel—Treasurer and 25% shareholder
- Manuel—Secretary and 25% shareholder

Rivera Decl. at ¶ 4 [Doc. No. 53]; Laurel Decl. at ¶ 4 [Doc. No. 53]; and Manuel Decl. at ¶ 4 [Doc. No. 53].

Rivera, Laurel, and Manuel each testify that they never authorized the filing of the petition; that Reznick was never employed by the Hospice as its attorney; that Hargrove-Brown is not a shareholder, officer, or director of the Hospice; and that in October 2021, the Hospice's Chase bank account was breached. Rivera Decl. at ¶¶ 6–8; Laurel Decl. at ¶¶ 6–8; and Manuel Decl. at ¶¶ 5–7.

James A. Dumas, an attorney not involved in the Hospice's bankruptcy, filed a declaration "to bring to the Court's attention the information that I have about these people for its possible relevance to the matters that are immediately before the Court." Dumas Decl. at ¶ 2 [Doc. No. 43]. Dumas alleges that Reznick, working in concert with Daniel Callahan, has a pattern and practice of abusing the legal system to take over operating businesses, and that Reznick's tactics often involve non-meritorious allegations of embezzlement directed against the owners of the target businesses.

Reznick moves to strike the Dumas Declaration (the "Motion to Strike"). Reznick argues that Dumas filed his declaration for the improper purpose of gaining a litigation advantage in an unrelated personal injury dispute in which Dumas represents parties adverse to parties represented by Reznick. In opposition to the Motion to Strike, Dumas states that he filed his declaration only because he "would like Mr. Reznick and Mr. Semenza to see the error of their ways and to stop enabling Mr. Callahan to defraud courts." Doc. No. 48 at ¶ 6.

Hargrove-Brown submitted a declaration in opposition to the OSC [Doc. No. 52] (the "First Hargrove-Brown Decl."), which was filed by attorney Lawrence J. Semenza ("Semenza"). Hargrove-Brown subsequently submitted a supplemental declaration [Doc. No. 54] (the "Supplemental Hargrove-Brown Decl."), which Hargrove-Brown filed without representation by counsel. In the Supplemental Hargrove-Brown Decl., Hargrove-Brown testifies that although she discussed the filing of the First Hargrove-Brown Decl. with Semenza, Semenza did not provide her an opportunity to conduct a "final review of the declaration ahead of filing." Supplemental Hargrove-Brown Decl. at ¶ 34. As a result, information that Hargrove-Brown thought would be included in the First Hargrove-Brown Decl. was omitted. *Id.*

In the Supplemental Hargrove-Brown Decl., Hargrove-Brown testifies that her review of the exhibits filed by the UST "indicate that my understanding of what may have transpired is different than I was led to believe." *Id.* As the Supplemental Hargrove-Brown Decl. was filed without the assistance of any of the attorneys whose conduct has been called into question, it is worth quoting at length:

> In or around July 2019, I was hired by Clinica Medica General Medical Center, Inc., a group of medical clinics in the Los Angeles California area, to work in their academics unit, to recruit colleges and universities to work with our clinics. The names of the individual clinics were: Los Angeles Clinica Medica General Medical Center, Inc., El Monte Clinica General Medical Center, Inc., The Valley Clinica Medica General Medical Center, Inc., and Huntington Park Clinica Medical Center, Inc. Collectively I will call these "CMGs." …
> On or about April 2020, I started taking on more and more administrative duties with the CMGs to work on licensing compliance related issues.
> These clinics were owned by Dr. David Kyle and Mr. Miteshkumar (aka Mike) Patel. They are my supervisors.
> Over time I transitioned from doing compliance related work to full time administration. In and around April 2020, I was appointed the Global Administrator for all of the clinics….
> Over time Dr. Kyle and Mr. Patel acquired additional clinics in the Sacramento, California area. For each of these clinics I would participate in the ownership/management transition process. Throughout this process there was a lot of turnover in staff where various people were transitioned out and in respectively. At the end of the process, I would be the head administrator with the title of Global Administrator for all of them. Likewise, it would be my HR team and IT teams that would work to implement this transition. Many of these clinics were not the best organized and took significant effort to get them on track and into the fold….
> On or about September 2, 2021 I was called into a meeting with Mr. Patel at CMG. Mr. Callahan also entered the room, and then left the room. There were several other individuals on the phone including Mr. Callahan, when he left the room. He had Mr.

Michael Reznick on the phone. Mr. Reznick tried to do a Zoom meeting with the individuals on the phone; it didn't work. During the course of the meeting I learned that it was a board meeting for Noblequest Health Foundation, Inc. Mr. Patel told me this, and that he was a board member. This is the first meeting related to Noblequest that I had participated in. By the end of this meeting I was told by Mr. Patel and the other individuals on the phone that I was voted in as the new CEO of Noblequest, and its entities including the Care Plus Medical Group at the previous board meeting. I was not at that meeting. This was not out of the ordinary for me, as I had been previously appointed to the position of CEO (a term I use interchangeably with "Global Administrator" and "President" as I understand the roles to be the same) on many occasions as described above.

 After the meeting ended, Mr. Callahan came into the room. Present with me was Mr. Patel. Mr. Callahan thereafter informed me that there were a lot of issues going on with Noblequest and its related entities that I should be aware of as the new CEO. He told me that another meeting would be scheduled and that he would explain more to me. He did say that Ms. Rivera, the previous CEO, had embezzled funds from the Noblequest organization and that she had been voted out when I was voted in….

 On or about December 3, 2021, I received a call from Mr. Reznick. He wanted to go over a retainer agreement between Noblequest and its other entities. I asked him why I needed to sign a retainer agreement if he was already the company attorney. He said that I needed to sign in order to protect myself and the company, and he told me that as the new CEO I had to be the person retaining him. Thereafter, he sent me the retainer agreement. I signed it…. To date I have never seen Mr. Reznick in person.

 On December 8, 2021, and at Michael Reznick's direction, I signed a bankruptcy petition on behalf of Noblequest Health Foundation, Inc…. I was told by Attorney Reznick that this was the best course of action for the company because prior management had destroyed evidence and was abusing the entity. This was the only way that the "bleeding" in effect could be stopped. I had no reason to doubt the truth of this statement.

 On December 9, 2021 at the direction of Mr. Patel, I, along with members of our HR and IT staff, went to the Noblequest office and introduced ourselves as the new management. These are the same groups I had worked with to integrate other clinics acquired by Mr. Patel and et al….

 At the Noblequest office we were treated by staff with hostility. When I arrived at the first floor lobby of LADMC, a NobleQuest location, we all signed in. We were told by the security personnel that we were not allowed to go up to the NobleQuest Clinic. Several of the staff from NobleQuest came down and asked me and my coworkers to leave; we remained outside for some time, because NobleQuest stated they called the LAPD. I was under the impression I had the right to be there.

 I called Mr. Patel to let him know what was going on…. There were no police that came so we left…. I asked Mr. Patel why the Noble Quest staff was calling the LAPD on us? He said that the staff had been brainwashed, and the old CEO doesn't want to leave her position….

 In early December, before the NobleQuest bankruptcy was filed, I was told by Mike Patel that [the Hospice] … was a hospice owned by Dr. Rose, and that Dr. Rose had appointed me personally as Administrator and President of his company to do all the

> administrative work. He said that I would need to go to the bank with Dr. Rose in order to setup new bank accounts for this entity. Thereafter, Dr. Rose called me and told me to meet him at a bank to open up accounts so that we would have new accounts open for a reorganization….
>
> I was further told [the Hospice] and NobleQuest were partner entities—that Dr. Rose pursued a venture with NobleQuest when he left in CMG in 2020, and that as a result of that relationship, Ailene Rivera had been able to harm [the Hospice] by taking money from it.
>
> Mr. Callahan called me a few days before this case was filed and told me that as the President of [the Hospice] that we were going to be filing a bankruptcy to reorganize and because I was the president I was the appropriate person to sign off on these documents. Thereafter, I called Mr. Patel to confirm that this was okay. Through my affiliation with the CMGs, I have always considered him to be my direct supervisor. He indicated that it was. While I was on the phone with Mr. Patel, Mr. Reznick called to tell me that we would be filing the bankruptcy to reorganize this organization and that I was the appropriate person to sign the petition as the president.
>
> Thereafter, Mr. Reznick sent the petition with the assistance of a paralegal, and I signed it…. During December 2021 and January 2021 I was under the impression that Ailene Rivera was working to undermine the will of the Board of Directors of NobleQuest who ousted her from her position….
>
> As the cases went on, it became apparent that (1) there was a dispute over the ownership of NobleQuest and my role as President/CEO/Global Administrator; (2) that there was a dispute as to whether Dr. Rose owned [the Hospice]; and (3) that Mr. Reznick did not have the information he indicated that he did in the Retainer Agreement….
>
> At this point, I am not sure who or what to believe. I was called a "deer in the headlights" by the Trustee. Unfortunately, that seems to be a rather accurate characterization of how I felt in this situation.

Supplemental Hargrove-Brown Decl. at ¶¶ 3–37.

## II. Findings of Fact and Conclusions of Law
### A. The Motion to Strike the Dumas Decl. is Granted in Part and Denied in Part

Contrary to the accusation made by Reznick, the Court does not believe that Dumas submitted his declaration for the improper purpose of obtaining a litigation advantage in an unrelated proceeding in which Dumas is adverse to Reznick. The Court accepts Dumas' representation that the declaration was submitted for the sole purpose of preserving the integrity of the judicial system.

Dumas acknowledges that he does not "know anything whatsoever about the within debtor or its history aside from what's in the Reznick and Rivera declarations and other Bankruptcy Court and Superior Court pleadings these initial documents prompted me to read." Dumas Decl. at ¶ 2. In view of Dumas' lack of personal knowledge regarding this case, the Court does not find it appropriate to consider his testimony for the purpose of determining whether Reznick and Hargrove-Brown are guilty of the misconduct alleged by the Trustee.

Further, the Dumas Decl. contains representations regarding Reznick's alleged conduct in unrelated proceedings. This proceeding concerns only Reznick's conduct before this Court; whatever conduct Reznick may or may not have engaged in before other courts is not relevant.

To the extent the Dumas Decl. recounts Reznick's actions in other unrelated proceedings, the Court does not consider it.

The Dumas Decl. attaches as exhibits certain materials that the Court may judicially notice under Evidence Rule 201. The exhibits include papers filed in other proceedings involving individuals affiliated with either the Hospice or with entities that Reznick has alleged are related to the Hospice. The Court finds it appropriate to take judicial notice of the exhibits attached to the Dumas Decl.

### **B. Findings of Fact**

Having reviewed the declarations of Ailene Rivera ("Rivera"), Paul Laurel ("Laurel"), Rosalie Manuel ("Manuel"), Michael E. Reznick ("Reznick"), Yvette Hargrove-Brown ("Hargrove-Brown"), United States Trustee Hatty Yip ("Yip"), and the evidence submitted in connection with those declarations, the Court makes the following findings of fact.

On October 29, 2021, Reznick filed a complaint in the Los Angeles Superior Court (the "State Court") on behalf of Jose De La Lana and other plaintiffs against Rivera and other defendants (the "State Court Complaint"). Doc. No. 41, Ex. D (State Court Complaint). Among other things, the State Court Complaint alleges that Rivera embezzled funds from the Hospice.

On December 14, 2021, Reznick caused the Hospice to file a voluntary Chapter 11 face-sheet petition. Doc. No. 1. According to its schedules, the Hospice is a "health care business" within the meaning of § 101(27A). Official Form 201 [Doc. No. 1] at ¶ 7.

Reznick failed to file the Hospice's deficient schedules and statements by the December 28, 2021 deadline, and did not seek an extension of that deadline. On January 5, 2022, the Court issued an order noting that the Hospice had failed to timely file its schedules and stating that the case would be dismissed without further notice or hearing if the deficient schedules were not filed by January 19, 2022. Doc. No. 10. On January 25, 2022, because the deficient schedules had still not been filed, the Court issued an order dismissing the case. Doc. No. 15.

The initial § 341(a) meeting of creditors took place on January 10, 2022. Reznick did not submit the seven-day compliance package to the United States Trustee (the "UST") prior to the meeting. When ask why the compliance had not been submitted, Reznick stated: "[T]here's nothing to—nothing meaningful I should say to provide other than we have no clue." Doc. No. 22, Ex. 3, at 18:10–11.

Yvette Hargrove-Brown ("Hargrove-Brown") signed the Hospice's petition, listing her title as the Hospice's "president." Official Form 201 at ¶ 17. When questioned at the meeting of creditors, Hargrove-Brown lacked the ability to answer even basic questions about the Hospice's business or operations. When asked whether there was an "actual hospice with patients located inside," she stated: "Listen. I can't say that for sure because they did not let me go inside." Doc. No. 22, Ex. 3 at 21:15–21. When asked to name the individuals serving on the Hospice's board of directors, she stated: "I literally have not looked at the sheet in the last couple of months. I'm sorry. I haven't looked at the sheet." *Id.* at 8:2–3.

Before the meeting of creditors was conducted, the UST asked Reznick to provide information concerning the Hospice, including its location, the number of people it employed, and the number of patients it treated. In response to the UST's request, Reznick provided only a copy of the State Court Complaint. Yip Decl. at ¶¶ 9–10 [Doc. No. 9]. The State Court Complaint does not include any of the background information on the Hospice sought by the UST. *Id.*

At the time Reznick filed the petition, he did not have an objectively reasonable basis for concluding that Hargrove-Brown, as opposed to Rivera, was the authorized representative of the Hospice. The Supplemental Hargrove-Brown declaration authenticates an e-mail that Reznick sent to Mike Patel ("Patel"), Daniel Callahan ("Callahan"), Semenza, and Hargrove-Brown on April 4, 2022 (the "April 2022 E-mail"). In the April 2022 E-mail, Reznick acknowledges that he lacked any information to substantiate his allegation that Rivera was not the legitimate owner of the Hospice; that he had conducted no due diligence to confirm the claim made by Daniel Rose ("Rose") that Rose, as opposed to Rivera, owned the Hospice; that he had no documentation to demonstrate that the instant bankruptcy filing was not fraudulent; and that he feared that the filing of the petition could ultimately lead to the suspension of his law license. The e-mail is worth quoting at length (emphasis added by the Court):

> Everything I am doing right now is tied in some way to the Bankruptcy OSC involving DA & AR Hospice Care Inc. ("DA" or the "Debtor"), a company *I have been told but have been unable to prove is apparently related in some way to NobleQuest*, the non-profit I do represent (the "DA OSC") and Care Plus, Inc. ("CPI"), a related company that I was informed in October 2021 was owned or controlled by Jose De La Lallana ("Dr. L"), when he signed the written retainer in front of me at a face to face meeting in Los Angeles.
> I was subsequently informed by Daniel Callahan ("DC") that Daniel Rose, M.D. or one of his many related entities that you are as familiar with as me ("Dr. Rose") now owns or controls the Debtor *but I have never confirmed this*.
> I have also asked repeatedly from DC [Daniel Callahan] and alleged members of "new" management, including Hargrove Brown and Kelli Williams, who I am told is the "Chief Reorganization Officer" ("CRO") of NobleQuest, Care Plus and DA based on a creditor debtor relationship that I also have not confirmed, to provide me with any documentation whatsoever that proves the legitimacy of you or our team's management and control of any of these entities.
> Please be advised that beyond the SLC Notice that I prepared nearly a year ago, *I have nothing to disprove that Ailene Rivera is not in fact the legitimate owner of these medical practices but for the fact that she is not a licensed California physician* …. I asked for anything from DC [Daniel Callahan], Kelli or anyone else connected with the underlying matters to find something to show legitimacy.
> The United States Department of Justice and US Trustee are accusing me of filing a fraudulent bankrutpcy [sic] petition *and I have no documentation to prove otherwise from you, DC [Daniel Callahan], Kelli, Hargrove Brown, or anyone else on your legal and business teams*….
> Please be advised that the OSC requires me to personally appear before Judge Robles. If the OSC is further granted (he will likely rubber stamp whatever the Trustee wants), the matter will then be sent to the bankruptcy panel's disciplinary committee to determine whether the BK Petition we filed for the Debtor was in fact "fraudulent" in light of our filing of the petition with absolutely no schedules attached despite my repeated warnings not to do so in light of my prior experience in the Marciano Bankruptcy filings, and my demand that an amended petition be filed with some form of schedules as soon as I learned of the deficiency.

> Obviously, that was not or could not be done and we were forced under the circumstances to go forward with the initial trustee interview and creditor's meeting without so much as a single document. Under the circumstances, the OSC should come as no surprise.
>
> Please be advised that without some genuine showing of legitimacy in my opposition, as opposed to the bullshit I have received in the past, the OSC will likely be granted and I will need to appear before the disciplinary committee to justify what I did to the committee. *In the meantime, the California and likely New York and Illinois Bars will suspend my law licenses pending the committee's investigation and report. I will be out of business*.
>
> More importantly *I do not know who is running the show right now to get the kind of answers I need* before filing anything else concerning the companies that you and DC [Daniel Callahan] are connected with that are also connected with the OSC. I don't know who if anyone is telling the truth out there and don't understand why we need to play "hide the ball?" It is not how I operate and I do not intend to file anything connected with these companies for anyone until the mess is straightened out….
>
> *In summary, the bottom line is that I cannot go into court with the scant evidence we now have against Ailene Rivera.* We will be laughed out of court and it will be binding on us for any future proceeding, including the pending OSC in the DA BK.
>
> We need to explain what happened with Ailene without any further bullshit. We need to deal with the facts that we have, even the bad facts. I can fix or spin what I know, but not what is concealed from me. *Right now all I have is thin air and I need help from everyone because Ailene looks to me and the judge and Department of Justice and Chase like the one who is wearing the "white hat," while we all look like common criminals.*

Supplemental Hargrove-Brown Decl., Ex. 6.

There is nothing in Reznick's response to the OSC that rebuts the admissions made in the April 2022 E-mail or that in any way provides any excuse or justification for Reznick's conduct. If anything, Reznick's response to the OSC further demonstrates that when Reznick filed the petition, he lacked any objectively reasonable basis to conclude that he was authorized to do so. In an attempt to distract attention from his own wrongful conduct, Reznick's response to the OSC consists not of concrete evidence but rather further uncorroborated allegations against Rivera. For example, to explain his inability to produce any documents showing that Rivera is **not** authorized to act on behalf of the Hospice, Reznick alleges that "Rivera and her cronies who participated in the criminal enterprise removed and stole any and all pertinent files containing corporate records and other critical documents pertaining to ownership and control … from the [Hospice's] premises in the dark of night …." Reznick Decl. [Doc. No. 41] at ¶ 7. The primary evidence that Reznick has produced in support of his assertion that Rivera embezzled funds from the Hospice is the State Court Complaint, which is not evidence as it consists solely of allegations.

Reznick argues that as a matter of law, Rivera could not act as the Hospice's authorized representative because she "is a Physical Therapist by trade … and thus cannot legally own, control or operate any of the medical corporations and businesses that she is now claiming under penalty of perjury to be the 'owner' and 'CEO' of …." Reznick Decl. at ¶ 2. Reznick mis-states the law. Cal. Corp. Code § 13401.5(a)(12) provides that a licensed physical therapist may be a

shareholder of a professional medical corporation. Rivera is a licensed physical therapist with the State of California, License No. 28631.

In support of his allegation that Rivera was not authorized to act on behalf of the Hospice, Reznick points to actions taken at a September 2, 2021 meeting of the board of directors of NobleQuest Health Foundation, Inc. ("NobleQuest"). According to Reznick, Rivera was placed on paid administrative leave from her position as CEO of NobleQuest, and a special litigation committee was formed to investigate allegations of Rivera's embezzlement.

The Court makes no findings with respect to what occurred at the NobleQuest board meeting. But even if Reznick has accurately recounted what occurred at the board meeting, that would not confer upon Reznick authority to act on behalf of the Hospice, which is a completely different entity.

At the time Reznick filed the petition without authorization, the Hospice's ownership structure was as follows:

- Rivera—President and 50% shareholder
- Laurel—Treasurer and 25% shareholder
- Manuel—Secretary and 25% shareholder

Rivera Decl. at ¶ 4 [Doc. No. 53]; Laurel Decl. at ¶ 4 [Doc. No. 53]; and Manuel Decl. at ¶ 4 [Doc. No. 53].

Rivera, Laurel, and Manuel did not authorize the filing of the petition, and did not retain Reznick to represent the Hospice. Rivera Decl. at ¶¶ 6–8; Laurel Decl. at ¶¶ 6–8; and Manuel Decl. at ¶¶ 5–7. In this regard, the Court notes that Reznick has failed to produce an executed retainer agreement indicating that he was authorized to represent the Hospice. The only retainer agreement that Reznick has produced pertains to Care Plus Medical Group, Inc. ("Care Plus"). Even that retainer agreement has not been signed by any authorized representative of Care Plus. Doc. No. 41, Ex. C. (According to the retainer agreement, Jose De Llana is the president of Care Plus; the signature line for De Llana is blank.)

At the hearing on the OSC, Reznick reiterated his allegation that Rivera was not authorized to act on behalf of the Hospice because is a physical therapist. Reznick did not produce any other evidence indicating that he was authorized to cause the Hospice to seek bankruptcy protection. None of the statements made by Reznick at the hearing convince the Court to depart from its conclusion that Reznick lacked authorization to file the bankruptcy petition on behalf of the Hospice.

Since 2021, Hargrove-Brown has signed seven bankruptcy petitions (including the Hospice's petition). All of the petitions were dismissed shortly after they were filed. The following list summarizes the petitions signed by Hargrove-Brown:

1) **Gregory G. Smith, MD, a professional corporation, Case No. 2:21-bk-11688-VK.** Filed on October 14, 2021 by Joel Rapaport as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on December 13, 2021 after the UST filed a § 1112(b) motion.
2) **The Valley Clinica Medica General Medical Center I, Case No. 1:21-bk-11802-VK**. Filed on November 1, 2021 by Joel Rapaport as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on December 10, 2021 after the UST filed a § 1112(b) motion.

3) **Huntington Park Clinica Medica General Medical Center, Inc., Case No. 1:21-bk-11821-VK**. Filed on October 29, 2021 by Joel Rapaport as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on December 10, 2021 after the UST filed a § 1112(b) motion.
4) **Los Angeles Clinica Medica General Medical Center, Inc., Case No. 1:21-bk-11823-VK**. Filed on November 1, 2021 by Joel Rapaport as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on November 8, 2021 for failure to file initial petition documents.
5) **El Monte Clinica Medical, Inc.**, **Case No. 1:21-bk-11825-VK**. Filed on November 1, 2021 by Joel Rapaport as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on December 10, 2021 after the UST filed a § 1112(b) motion.
6) **NobleQuest Health Foundation, Inc.**, **Case No. 1:21-bk-11978-MB**. Filed on December 8, 2021 by Michael Reznick as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "Global Administrator." The case was dismissed on December 27, 2021 for failure to file information required under § 521(a)(1).
7) **DA & AR Hospice Care, Inc., Case No. 2:21-bk-19219-ER (the instant case)**. Filed on December 14, 2021 by Michael Reznick as counsel. The voluntary petition was signed under penalty of perjury by Hargrove-Brown as "President." The case was dismissed on January 25, 2022 for failure to file schedules.

### C. Conclusions of Law
#### 1. By Filing the Petition, Reznick Committed Fraud on the Court and Violated Bankruptcy Rule 9011

"State law determines who has the authority to file a voluntary bankruptcy petition on behalf of a debtor." *Sino Clean Energy v. Seiden (In re Sino Clean Energy, Inc.)*, 901 F.3d 1139, 1141 (9th Cir. 2018). Reznick lacked authority to file the petition on behalf of the Hospice because the Hospice's shareholders had not retained Reznick to represent the Hospice and did not assent to the filing of the petition. Reznick lacked an objectively reasonable basis to support either his allegation that Rivera was *not* authorized to act on behalf of the Hospice, or his contention that Hargrove-Brown was the Hospice's president.

By signing the petition on behalf of the Hospice, Reznick was representing to the Court that he had authority to cause the Hospice to seek bankruptcy protection. That representation constituted a fraud on the court. As this Court has explained:

> Fraud on the court embraces "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.),* 926 F.2d 912, 916 (9th Cir.1991). The inquiry must focus upon "whether the alleged fraud harms the integrity of the judicial process":
>
>> '[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the

institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.'

*Intermagnetics,* 926 F.2d at 916–917 (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil of Cal. v. United States,* 429 U.S. 17, 18, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976)).

*Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721, 729 (Bankr. C.D. Cal. 2015).

Reznick's misrepresentations also violated Bankruptcy Rule 9011. Under Rule 9011, by filing the petition, Reznick was certifying to the Court that to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, … the factual contentions [set forth in the petition] have evidentiary support." As set forth above, Reznick had no reasonable basis to conclude that he was authorized to represent the Hospice. His representation to the contrary violated Rule 9011.

2. Reznick's Violations Warrant Referral to the Bankruptcy Court's Disciplinary Panel

The fraud on the court committed by Reznick is sufficiently serious to warrant referral to the Bankruptcy Court's Disciplinary Panel, pursuant to Sixth Amended General Order 96-05 ("General Order 96-05"). This Memorandum of Decision constitutes the Statement of Cause required by General Order 96-05. For the reasons set forth herein, the Court recommends that Reznick's privilege to practice in the United States Bankruptcy Court for the Central District of California be revoked for a period of at least three (3) years from the date of the order to be entered by the Disciplinary Panel. The Court further recommends that after the expiration of the suspension period, Reznick be permitted to apply for reinstatement of his practice privileges only if he has (a) successfully completed twenty (20) hours of bankruptcy-related Mandatory Continuing Legal Education in ethics; (b) demonstrated that he is in good standing with the State Bar of California; and (c) demonstrated that he has met all additional reinstatement requirements set forth in General Order 96-05.

3. Disgorgement of Fees

At the § 341(a) meeting, Reznick and Hargrove-Brown testified that Reznick received $15,000 to file the petition. In the declaration he filed in response to the OSC, Reznick testifies that the $15,000 he referred to at the § 341(a) meeting "was from Care Plus Medical Corporation, … not [the Hospice]." Reznick Decl. at ¶ 18. Reznick testifies that he has "never received any fees, reimbursement of costs or other compensation directly or indirectly from [the Hospice]." *Id.*

Given that Reznick was not authorized to file the petition by the Hospice's actual shareholders, his claim that he did not receive any compensation from the Hospice is believable. The Court will not order Reznick to disgorge any fees. This determination is subject to reconsideration should evidence be presented to the Disciplinary Panel demonstrating that Reznick did in fact receive payment to file the petition on behalf of the Hospice.

4. The Court Imposes Re-Filing Restrictions on Hargrove-Brown

Subsequent to October 2021, Hargrove-Brown has signed the petitions of seven entities that have sought bankruptcy protection. All seven of the cases were dismissed shortly after they were filed because the Debtors failed to comply with basic requirements of the Bankruptcy Code.

Pursuant to § 349, the Court has authority "to control abusive filings" through the imposition of an indefinite re-filing bar. *Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 942 (B.A.P. 9th Cir. 1997), *aff'd,* 171 F.3d 1219 (9th Cir. 1999). Hargrove-Brown signed petitions on behalf of seven Debtors who sought bankruptcy protection without any intent of taking advantage of legitimate objectives under the Bankruptcy Code. Accordingly, the Court finds it appropriate to impose the following re-filing restrictions upon Hargrove-Brown:

1) For a period of five years from the date of issuance of this Memorandum of Decision, Hargrove-Brown is barred from signing any bankruptcy petition as the authorized representative of any entity, unless Hargrove-Brown first obtains authorization from the Court. To obtain such authorization, concurrently with the filing of a proposed bankruptcy petition (the "Proposed Petition") of an entity upon whose behalf Hargrove-Brown claims to act as the authorized representative, Hargrove-Brown shall file a declaration, accompanied by evidence as necessary, establishing that (a) she is authorized to sign the Proposed Petition on the entity's behalf and that (b) the entity is seeking bankruptcy protection in good faith. The Proposed Petition shall ***not*** be deemed to have been filed, and no Order for Relief shall take effect, unless and until the Court enters an order finding that (a) Hargrove-Brown has the authority to sign the Proposed Petition on behalf of the entity and that (b) the entity is seeking bankruptcy protection in good faith.
2) The restrictions set forth in ¶ 1 shall not apply to the following entities, which are solely owned by Hargrove-Brown: (a) Hargrove Healthcare Consulting and (b) Family Community Inc. (a 501(c)(3) charitable corporation). The restrictions set forth in ¶ 1 shall not prevent Hargrove-Brown from filing a personal bankruptcy petition.

The Court declines to require Hargrove-Brown to reimburse the Subchapter V Trustee for the fees incurred in the instant case, as requested by the UST. The Court credits Hargrove-Brown's testimony that she signed the petition because she believed Reznick's representations that the filing of the petition "was the best course of action for the company because prior management had destroyed evidence and was abusing the entity." Supplemental Hargrove-Brown Decl. at ¶ 22. To require Hargrove-Brown to pay the Subchapter V Trustee's fees, the Court would have to find that she was acting in bad faith. The evidence before the Court shows that Hargrove-Brown was deceived by Reznick, not that she was acting in bad faith. Further, Hargrove-Brown's declaration testimony—in particular her disclosure of the April 2022 E-mail—has played a meaningful role in bringing Reznick's malfeasance to light.

## III. Conclusion

Based upon the foregoing, the Court finds that Reznick committed fraud on the Court by filing a bankruptcy petition on behalf of the Hospice without authorization to do so. The Court hereby refers Reznick to the Bankruptcy Court's Disciplinary Panel pursuant to General Order 96-05. The Court imposes the re-filing restrictions set forth herein upon Hargrove-Brown.

The Court will prepare and enter an order consistent with this Memorandum of Decision.

###

Date: June 27, 2022

Ernest M. Robles
United States Bankruptcy Judge